**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
HELEN EBBERT, PAMELA EDWARDS,
ISABELLA MINNECI, WENDY MURO, and
FRANCES KAMERER, and all others
similarly situated,

                           Plaintiffs,                     **MEMORANDUM**
                                                                         **AND ORDER**
                - against -

                                                                       CV 05-5445 (FB) (AKT)

NASSAU COUNTY, NASSAU COUNTY
POLICE DEPARTMENT, NASSAU COUNTY
CIVIL SERVICE COMMISSION, THOMAS R.
SUOZZI, in his official capacity,

                           Defendants.
------------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.     BACKGROUND**

      Plaintiffs in this case, Nassau County Police Communication Operators ("PCOs") and Police Communication Operator Supervisors ("PCO Supervisors"), commenced this action seeking injunctive relief and money damages on a variety of federal and state law claims relating to their employment. In particular, Plaintiffs allege violations of (a) the Equal Pay Act, 29 U.S.C. §§ 206(d) et seq., (b) the New York State Equal Pay Act, and (c) New York Labor Law. The heart of Plaintiffs' Equal Pay Act claim goes to their argument that they are being paid substantially lower wages for similar work being done by Fire Communication Technicians I ("FCT I") and Fire Communication Technicians II ("FCT II"). Defendants, on the other hand, contend that FCT I and FCT II positions are not substantially similar to PCOs and PCO Supervisors in the actual work performed.

Presently before the Court are several discovery motions. Plaintiffs have demanded production of the entry level examinations for PCOs and FCT Is. Defendants seek a protective order, arguing, among other things, that the release of these examinations will threaten the integrity of future examinations. In addition, non-party New York State Department of Civil Service ("NYSCS"), which was served with a subpoena by Plaintiffs, seeks to quash the subpoena (a) because it calls for production of documents purportedly protected by the deliberative process privilege, and (b) to the extent that it calls for the deposition of New York State Civil Service Commissioner Wall, whom NYSCS claims possesses no unique information regarding the topics set forth in the subpoena.

## II. THE PARTIES' CONTENTIONS

### A. *Motion for Protective Order Regarding PCO Competitive Examination*

PCOs and PCO Supervisors are employed by Defendant Nassau County (the "County") and are assigned to the Police Communications Bureau. FCT Is and FCT IIs are also employed by the County and are assigned to the Office of the Nassau County Fire Marshall at the Communications Center of the Bureau of Fire and Rescue Services. Although Plaintiffs assert that these positions involve substantially similar work, Defendants maintain that the positions are not substantially similar and that the related positions of PCO and FCT I as well as PCO Supervisor and FCT II are paid the same.

The record here discloses that the entry level test for PCO positions is maintained and administered by the Nassau County Civil Service Commission. The civil service examinations for the positions of FCT I and FCT II are created and maintained by NYSCS.

According to Defendants, the examination questions and related materials requested in Plaintiffs' document demands are not relevant to this litigation because the alleged discrimination is based upon Plaintiffs being paid a substantially lower wage for substantially similar work. Moreover, Defendants claim the tests are unrelated to the grade, step and salaries of persons appointed to the titles at issue. In fact, Defendants argue that civil service examinations are used only to determine an applicant's merit and fitness for appointment to a title, and that the test is only one of several factors used in making that determination. Defendants also note that there is not a single mention of the competitive examination in the Complaint and no allegation has been asserted by Plaintiffs that the examination questions have any discriminatory impact on them.

In seeking a protective order, Defendants rely upon the Court's discretion under Fed. R. Civ. P. 26(c) to preclude such production where the burden outweighs the benefit – asserting here that the burden of adverse consequences to the Defendants if this sensitive information is disclosed (although admitting that such material is not privileged) outweighs the benefit to Plaintiffs. Defendants also rely upon 4 NYCRR §§ 70.1 through 70.4, and particularly § 70.2 which states that "[c]opies of questions used in examinations shall not be furnished except in cases there they are published by the department for general information." Finally, Defendants cite New York Public Officers Law § 87(2)(h) which prevents the dissemination of "examination questions or answers which are requested prior to the final administration of such questions." According to the County, grade, step and salary determinations are made by the Nassau County Civil Service Classification Unit based upon the duties attached to a position and the complexity of those duties, not upon examinations. As such, the County argues, even if the PCO and FCT I

3

tests were the same or similar, that fact would have no impact on this litigation because the tests are not determinative and therefore should not be disclosed.

Plaintiffs contend, however, that the discovery rules are liberal and that no privilege attaches to the documents at issue. Moreover, Plaintiffs assert that since they are requesting examinations previously administered, such tests are not protected by the New York Civil Service Law. Plaintiffs also argue that their expert witness needs these documents and have provided an affidavit from the expert to this effect. The expert avers that in order to conduct a full job analysis, the qualifying examinations are important to demonstrate the skills for which the employer tests, thereby indicating the skills the employee deems to be important for the job. *See* Affidavit of Kathleen K. Lundquist (attached to Plaintiffs' opposition papers), DE 27-1, at ¶ 4. Plaintiffs' counsel argues that this information is essential because in order to prove a violation under the Equal Pay Act, Plaintiffs must show that the analyzed jobs are substantially similar in terms of skill, effort and responsibility.

Relying upon Defendants' statements to the New York State Division of Human Rights during the administrative proceeding precedent to this lawsuit, Plaintiffs point out that in response to Plaintiff Muro's discrimination charge, the County argued that evidence of the difference in the jobs was reflected by the different written entrance examinations administered by the County. According to Plaintiffs, the County spent significant time detailing how the PCO exam is different from the FCT test. Consequently, Plaintiffs argue, they should be permitted to test this assertion. Likewise, Plaintiffs maintain that Public Officers Law § 87(2)(h) is not relevant here because the statute is limited to FOIA requests which involve disclosure of information to the general public.

As to the "final administration" issue raised by the County, Plaintiffs contend that since they are only seeking "prior exams which have been finally administered" and not ones "that are going to be given in the future," the request falls outside the prohibition of Rule 70.2. Plaintiffs offer their willingness to enter into a restricted Confidentiality Agreement with the County regarding the examination materials.

B. *Non-Party Motions to Preclude Commissioner's Deposition and for Protective Order Regarding FCT Competitive Examination*

On November 22, 2006, Plaintiffs served non-party NYSCS with a subpoena, seeking (a) the production of Civil Service Commissioner Wall for a deposition in December 2006; (b) the production of copies of all examinations as used by Nassau County for employment as a Fire Communications Technician ("FCT"); (c) copies of any and all documents used and/or relied upon to develop the examinations used for the Nassau County FCT position; and (d) copies of all validation studies conducted in reference to the Nassau County FCT examination and/or salary grade classification. NYSCS objected to the subpoena via letter dated December 1, 2006 and now moves to quash the subpoena and for a protective order under Fed. R. Civ. P. 26(c) seeking to (a) preclude the production of such documents in response to the subpoena which are deemed overly broad and protected by the deliberative process privilege; (b) preclude production on the grounds that the requested documents lack relevance to the issues in this litigation; and (c) preclude the deposition of Commissioner Wall on the grounds that Plaintiffs have not demonstrated that Commissioner Wall possesses unique information that cannot be obtained from any other source.

Although Plaintiffs requested examinations and related materials from non-party NYSCS for 2002, 1999 and 1994, NYSCS claims that it is not in possession of examinations for 1994

and 1999, but has requested these documents from the New York State Archives which is conducting a search. Notwithstanding the search, NYSCS maintains that the examination questions themselves are entitled to protection because their disclosure would impair the ability of NYSCS to use these same questions in any future examinations. According to NYSCS,

> [t]he examination questions are not circulated publicly and are frequently utilized again on subsequent examinations. Thus, release of the examination questions to plaintiffs would invalidate their use in other examination and require substantial work and expense on the part of NYSCS to promulgate new questions. Civil service examination questions are not "finally administered" after their use in an examination and moreover are excluded from disclosure by the Truth in Testing Law (Education Article 7-A). Further, the determination of "finally administered" rests with the administering agency [citations omitted].

NYSCS December 4, 2006 letter motion, at p. 2.

With regard to the subpoena for Commissioner Wall's testimony, NYSCS states that Plaintiffs have not demonstrated, as they are required to do, that the Commissioner has unique information relevant to this lawsuit that cannot be obtained elsewhere. In fact, NYSCS argues, other staff members of NYSCS are more knowledgeable regarding the communications and interactions with Nassau County officials pertaining to the preparation of the examination questions than the Commissioner himself. Further, NYSCS states that pulling the Commissioner away from his duties will hamper his ability to attend to the essential and critical matters of the entire agency.

### III.   STANDARD OF REVIEW

#### A.   *Motion to Quash Under FRCP 45*

Under Federal Rule 45, "[o]n timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it . . . subjects a person to undue burden." Fed. R. Civ. P.

45(c)(3)(A)(iv). "The burden of persuasion in a motion to quash a subpoena and for a protective order is borne by the movant." *Genal Strap, Inc. v. Dar,* CV 04-1691, 2006 WL 525794 at *1 (E.D.N.Y. 2006), quoting *Jones v. Hirschfeld*, 219 F.R.D. 71, 74-75 (S.D.N.Y. 2003). Determinations of issues of "undue burden" are committed to the discretion of the trial court. *Jones v. Hirschfeld*, 219 F.R.D. at 74. Further, Rule 26(c) allows a court to impose a protective order if necessary to protect any person from "undue burden." Here, non-party NYSCS seeks to quash the subpoena for the referenced examination questions and related examination materials as well as for the deposition of Commissioner Wall.

In evaluating "undue burden," a court is required to weigh the burden to the subpoenaed party against the value of the information to the serving party. *Travelers Indem. Co. v. Metropolitan Life Ins. Co.*, 228 F.R.D. 111 (D. Conn. 2005). Whether a subpoena imposes an undue burden depends upon "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *United States v. Int'l Bus. Mach. Corp.*, 83 F.R.D. 97, 104 (S.D.N.Y. 1979). Courts do, however, accord special weight to the burden on non-parties of producing documents for others involved in litigation. *See Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) ("concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs").

Essentially, non-party NYSCS asserts that Commissioner Wall should fall under the "high ranking" government official exemption with respect to his being deposed. Generally, high ranking government officials are not subject to depositions. *See Marisol A. v. Guiliani*, No. 95-CV-10533, 1998 WL 132810, at *3 (S.D.N.Y. Mar. 23, 1998) (citing *National Nutritional*

*Foods Ass'n v. F.D.A.*, 491 F.2d 1141, 1144-46 (2d Cir.), *cert. denied*, 419 U.S. 874 (1974). High ranking government officials are granted this limited immunity from being deposed "when they have no personal knowledge to ensure that they have the time to dedicate to the performance of their governmental functions." *Marisol A.*, 1998 WL 132810, at *3 (citing *Warzon v. Drew*, 155 F.R.D. 183, 185 (E.D. Wis. 1994)). The policy surrounding this privilege is to allow the function and flow of government to proceed unabated. *See Capitol Vending Co. v. Baker*, 36 F.R.D. 45, 46 (D. D.C. 1964); *Church of Scientology v. I.R.S.*, 138 F.R.D. 9, 12 (D. Mass. 1990).

However, "depositions of high level government officials are permitted upon a showing that: (1) the deposition is necessary in order to obtain relevant information that cannot be obtained from any other source and (2) the deposition would not significantly interfere with the ability of the official to perform his governmental duties." *Toussie v. County of Suffolk*, No. 05-CV-1814, 2006 WL 1982687, at *1 (E.D.N.Y. July 13, 2006) (citing *Marisol A.*, 1998 WL 132810, at *2); *see also Martin v. Valley Nat'l Bank*, 140 F.R.D. 291, 314 (S.D.N.Y. 1991). Where the government official was personally involved in the event(s) giving rise to the litigation, courts have directed such depositions to go forward. *Lederman v. Giuliani*, No. 98-CV-2024, 2002 WL 31357810, at *1 (S.D.N.Y. Oct. 17, 2002); *Gibson v. Carmody*, No. 89-CV-5358, 1991 WL 161087, at *1 (S.D.N.Y. Aug. 14, 1991). However, "while granting a protective order and quashing a deposition is the exception rather than the rule, the burden a deposition would place on a high ranking government official must be given 'special scrutiny.'" *Marisol A.*, 1998 WL 132810, at *2; *Murray v. County of Suffolk*, 212 F.R.D. 108, 109 (E.D.N.Y. 2002).

**B.** *Motion for Protective Order Under Rule 26(c)*

Rule 26(c) of the Federal Rules of Civil Procedure provides that

> [u]pon motion by a party or by the person from whom discovery is sought . . . and for good cause shown, the court in which the action is pending . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. . ..

A court is given broad discretion in determining whether to issue a protective order under Rule 26c). *Jerolimo v. Physicians for Women, P.C.*, 238 F.R.D. 354 (D. Conn. 2006), citing *Dove v. Atl. Capital Corp.*, 963 F.2d 15, 19 (2d cir. 1992). A protective order may only be issued, however, after the movant demonstrates that good cause exists for the protection of the material. *In re Agent Orange Prod. Liab. Litig.*, 821 F.2d 139, 145 (2d Cir. 1987). If the movant "establishes good cause for protection, the court may balance the countervailing interests to determine whether to exercise discretion and grant the order." Hasbrouck v. BankAmerica Housing Services, 187 F.R.D. 453, 455 (N.D.N.Y. 1999); see also Rofail v. U.S., 227 F.R.D. 53, 56 (E.D.N.Y. 2005) (good cause cases usually involve a litigant's concern that private information obtained in discovery will become public).

## IV.  DISCUSSION

### A.  *Deposition of Commissioner Wall*

As the movants on these motions, the County and NYSCS have the burden of demonstrating good cause for the issuance of a protective order precluding (i) the deposition of Commissioner Wall, and (ii) the production of the referenced examinations and related test materials. *Jerolimo*, 238 F.R.D. at 356. Courts often grant protective orders in cases where a high ranking official provides an affidavit or declaration stating that he has no first-hand knowledge of the facts or circumstances at issue. *See, e.g.*, *Toussie*, 2006 WL 1982687, at *1; *Eldaghar v. The City of New York Dep't of Citywide Admin. Serv.*, No. 02-CV-9151, 2004 WL

421789, *2 (S.D.N.Y. Mar. 5, 2004). Although no affidavit has been submitted here, non-party NYSCS represents that a deposition of Commissioner Wall would significantly interfere with his ability to perform his governmental duties. Plaintiffs do not argue that the Commissioner is not a high-ranking official, so for purposes of this motion, I find that it is more likely than not that Commissioner Wall fits the definition of a high-ranking government official, thereby meeting the first prong of the *Marisol A.* test.

The question then becomes whether the deposition is necessary in order to obtain relevant information that cannot be obtained from any other source. Aside from Commissioner Wall's threshold qualification as a high ranking government official, Plaintiffs have not shown that he possesses any unique information relevant to this case which is not available from other sources. To the contrary, NYSCS states that

> . . . Commissioner Wall does not possess any personal knowledge about the underlying matters since he is neither the person who developed the examination nor had any communication with the Nassau County officials about the respective pay scales at issue.

DE 28, at p. 3.

The first prong of the high ranking government official privilege is clear – "the deposition must be necessary in order to obtain relevant information that cannot be obtained from any other source." *Murray*, 212 F.R.D. at 109. The first prong of the *Marisol A.* test has been strictly enforced, *Lederman*, 2002 WL 31357810, at *1, except where the witness has personally participated in the action at issue. *See Gibson* v. *Carmody*, No. 89-CV-5358, 1991 WL 161087, at *1 (S.D.N.Y. Aug. 14, 1991) (depositions of present and former government officials at level of police commissioner not lightly granted, except Commissioner could be deposed where he

personally participated in the disciplinary action). No evidence has been presented thus far to demonstrate that Wall had any direct involvement in the actual preparation or administration of the examinations nor any communications with any representatives of Nassau County about the pay scales at issue. Plaintiffs have not established that there is no alternative source of information and that any knowledge Wall may have regarding the PCO and FCT pay scales is unique and personal. *See Oneida Indian Nation of New York*, 2001 WL 1708804, at *1 (denying motion to compel deposition of Governor Pataki where defendants had not established that there was no alternative source of information available to defendants). Moreover, Plaintiffs have the ability to depose other members of the Commissioner's staff whom NYCSC can identify as having knowledge relevant to the litigation in these areas. Plaintiffs state that they "will waive their request for [Wall's] deposition, provided that he also attests to the fact that he had no communication with Nassau County regarding the exam." DE 29, at p. 3. For all of the foregoing reasons, I find that such an attestation is unnecessary. This determination is without prejudice to Plaintiffs' right to request the deposition of others within NYSCS who have personal knowledge about the development of the examinations.

NYSCS has demonstrated sufficient good cause to sustain their request for relief on this issue. Therefore, the motion for a protective order as to Commissioner Wall is GRANTED and he may not be deposed.

Having granted the motion for a protective order regarding Commissioner Wall, I further direct that Defendants are precluded from proffering an affidavit from Commissioner Wall in connection with any summary judgment motion and are further precluded from having him testify at trial unless Defendants subsequently choose to make him available for a deposition.

*See Eldaghar*, 2004 WL 421789, *2; *Schiller*, 2006 WL 2708464, at * 3. It is "fundamentally unfair to shield a witness from pretrial examination only to spring him on the adversary when a verdict is at stake." *Schiller*, 2006 WL 2708464, at *3 (citing *Local 621, S.E.I.U., AFL-CIO v. City of New York*, No. 99-CV-9025, 2002 WL 31151355 (S.D.N.Y. Sept. 26, 2002)).

### B. *PCO and FCT Examinations and Related Materials*

The County and NYSCS jointly seek a protective order preventing the disclosure of all Nassau County and New York State civil service examinations, as well as materials related to those examinations, for the positions of PCO, PCO Supervisor, FCT I and FCT II. They rely primarily on New York Codes, Rules and Regulations § 70.2 and Public Officers Law § 87 as a basis for not disclosing the requested documents. NYCRR § 70.2 states that "Copies of questions used in examinations shall not be furnished except in cases where they are published by the department for general information." New York Public Officers Law § 87 provides, in pertinent part, as follows:

> 2. Each agency shall, in accordance with its published rules, make available for inspection and copying all records, except that such agency may deny access to records of portions thereof that:
>
> \* \* \*
>
> (h) are examination questions or answers which are requested prior to the final administration of such questions.

On first blush, the arguments asserted by the County and NYSCS seem reasonable and well-grounded. Certainly, the County and NYSCS have a legitimate interest in their ability to use some of the questions from these examinations in future testing, as well as the resulting substantial work and expense which would be incurred to promulgate new questions. Although

Plaintiffs initially argued that these examinations should be produced because they are only seeking those which have been "finally administered" (DE 27 at p. 2), they subsequently acknowledge that "the NYSCS may want to maintain confidentiality of exams that have been finally administered because they may want to use some of the questions again." DE 29 at p. 2.

On further review of the statutes and applicable caselaw, the issue is less clear cut. The County and NYSCS' reliance upon § 70.2 ultimately is unavailing and Plaintiffs are correct that cases such as *Social Service Employees Union, Local 371 v. Cunningham*, 109 Misc.2d 331, 335, *aff'd* 90 A.D.2d 696 (1st Dep't 1982) deal with the disclosure issue specifically in the context of a FOIL request. That differing context is significant here. Plaintiffs are not challenging the validity of the examinations at issue nor is this a request pursuant to FOIL which has its own statutory provisions for enforcement. Counsel for these Plaintiffs served a duly-authorized subpoena specifically related to pending litigation focused on equal pay issues.

As such, the Court looks to what other courts have done in similar circumstances. In *Cuesta v. New York State Office of Court Administration,* No. 83 Civ. 3714, 1983 U.S. Dist. LEXIS 10827 at *9 (S.D.N.Y. December 14, 1983), for example, the court granted plaintiffs' motion in a Title VII discrimination case to compel the texts of questions asked in a competitive examination for appointment of New York state court officers, subject to an appropriate confidentiality order. In doing so, Judge Leval observed that "New York courts have not hesitated to order production of test questions to petitioners seeking review of Civil Service determinations under N.Y.C.P.L.R. Article 78 [citations omitted]."[1] *Id.* Noting the defendants'

---

[1] It is also significant to note that the New York State Appellate Division, Third Department, in an Article 78 proceeding – brought to vacate certain civil service examinations and to permanently enjoin the respondents from certifying eligible lists based upon those

reliance upon N.Y. Pub. Officers L. § 87(2)(h) and N.Y. Civil Service L., Regulation Part 70 as grounds for precluding production of the examinations, Judge Leval stated that these statutes "only show that there is a state policy against *unnecessary disclosure* of Civil Service examination questions." 1983 U.S. Dist. LEXIS 10827 at *10 (emphasis supplied).

The County and NYSCS also argue that the examinations and related materials are not relevant because they "were not utilized in determining the grade level to assign to these particular civil service titles." DE 28 at p. 2. "Relevance" under Rule 26(b) "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 2389 (1978). *See also Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 882 F.2d 682, 687 (2d Cir.1989) ("The broad scope of discovery delimited by the Federal Rules of Civil Procedure is designed to achieve disclosure of all the evidence relevant to the merits of a controversy."). In regard to the current discovery dispute, the Supreme Court noted in *Griggs v. Duke Power Co.*, 401 U.S. 424, 436 (1971) that standardized employment tests "must measure the person for the job and not the person in the abstract." *See also Gillespie v. State of Wisconsin*, 771 F.2d 1035, 1040 (7th Cir. 1985) (test is job-related if it measures traits that are significantly related to the applicant's ability to perform the job).

Having reviewed the record here, despite their attempts to "disconnect" the PCO and FCT

---

examinations – held that disclosure of the examination itself was necessary for adequate judicial review and directed respondents to produce the examination. *Matter of Sherman v. Bahou*, 73 A.D.2d 995 (3rd Dep't 1980). In addition to confirming the discoverability of the civil service examinations, the court further held that "the actual criteria used in rating petitioners' examinations should be disclosed, as well as their application in the grading process." *Id.*

examinations from grade levels assigned to those civil service positions, I find that the County has made this issue relevant by virtue of (i) its March 15, 2004 Position Statement to the New York State Division of Human Rights in response to individual Plaintiff Wendy Muro's charge that she was denied equal terms, conditions and privileges of employment in her civil service position as a PCO because of her sex and race/color, and (ii) statements contained in the Defendants' pending motion papers opposing Plaintiffs' motion for class certification.

In the March 2004 Position Statement, the County stated the following:

> D. <u>Differences Between a PCO and FCT</u>
>
> To be qualified for an appointment to the position of a PCO, a candidate must first pass a written test. The written test is designed to test for knowledge, skills and/or abilities in the following areas: spelling, name and number checking, coding and decoding information, map reading and analysis and dealing with people. In order to qualify for appointments to this position, candidate who pass the written examination must also pass a qualifying keyboard performance test. . . .
>
> To become a[n] FCT, a candidate must also first pass a written examination. However, this written test is designed to test for very specific knowledge, skills and/or abilities in the following areas: coding/decoding information, following directions (maps), retaining and comprehending spoken information from calls for emergency services, name and number checking and understanding and interpreting written material. In order to qualify for appointment, candidates who pass the written examination must also receive a passing score on a qualifying keyboard performance test.

DE 27-3, at p. 2.

In their Memorandum of Law opposing class certification, which motion is currently pending before Judge Block, the Defendants stated that

> Plaintiffs and the potential class members were moved to higher grades on the graded salary plan in 2001 and 2005. In or about April of 2001, the Nassau County Civil Service Commission at the request of the Nassau County Police Department reviewed the positions of PCSs and PCO

> Supervisors. The investigation concluded that the duties and work of FCT I and II's are more complex than the duties and work of PCOs and PCO Supervisors and that the class specifications and job requirements for FCT I's and II's are much more stringent than that of PCO's and PCO Supervisors. Nevertheless, the Commission approved upgrades of PCOs from a Grade 7 to a Grade 9 and for PCO Supervisors from a Grade 10 to a Grade 11 and made a recommendation to the Nassau County Legislature that the legislature approve this upgrade. The upgrade was approved and implemented according to the collective bargaining agreement without any concomitant loss of seniority or other benefits.

DE 23, at p. 2. Regardless of the outcome of the class certification motion, Plaintiffs have the right to explore and test the foregoing information, which I find relevant to both the claims and defenses asserted in this case.

In *Adams v. City of Chicago*, No. 94 C 5727, 1995 WL 423607, at *1 (N.D. Ill. 1995), the court considered questions similar to those raised here regarding the release of test questions and other related material. There, a group of African-American and Hispanic police officers in Chicago sued their employer on a disparate impact theory for depriving them of equal employment opportunities by basing promotions upon the sergeant promotional test. The City objected to the unprotected release of documents, including the test questions themselves and the accompanying answer key, and thereby moved for a protective order. *Id.* Specifically, the City argued that

> revealing the test development material will either waste substantial public funds or compromise the fairness and objectivity of future sergeant's examinations. . . . In addition to the concern about publication of the individual questions and answers, the City objects to the unrestricted production of the analysis performed by the consultant hired by the City to develop the 1993-94 exam. Barrett and Associates, Inc. ("Barrett") conducted an extensive job analysis which identified the important skills and abilities necessary to be a good sergeant. . . . The City also argues that, if the test development material is produced without a protective order, the City may be forced to start from scratch for the

> next exam, rendering the Barrett analysis useless and wasting public
> funds in the process.

*Id*.

Although plaintiffs in *Adams* attacked the City's claim of significant cost if the test development material was released, the court found that argument unavailing in light of the terms of the consulting and development agreement. While the court denied the motion to compel unprotected production of the test questions, the judge did note that the parties were free to alter the language of the existing protective order that governed the dissemination of other discovery materials or to enter another order addressed specifically to the test development material. *Id.* at *3.

Although not a disparate impact case, Plaintiffs in the instant action maintain that Defendants have intentionally discriminated against them in violation of equal pay statutes and that these examination materials, like those in *Adams*, are not only relevant but are essential to answering Defendants' claims that the PCO and FCT positions are substantially similar. Moreover, Plaintiffs' expert has been engaged to render an opinion on that very issue. Lundquist Aff., ¶ 2. According to Plaintiffs' expert, it is critical for her study to

> 4. . . . examine the entrance level tests and accompanying validation
> documentation developed and administered for the FCT and PCO jobs.
> This information will demonstrate the skills for which the employer tests to
> qualify all candidates, hence indicating those skills deemed by the employer
> to be important for the jobs. I will be able to see whether the employer
> believes the same or similar skills are necessary for each one of the positions.
> The exams and underlying validation documents will reflect the skills
> that the employer views as necessary for the performance of each job.
>
> 5. I have also reviewed many of the documents that have been produced by
> Defendants in this case and note that they repeatedly justify the differences
> between the jobs on the basis of how the examinations for the two positions

17

differ in complexity. Since the names of many of the skills tested are the same for the two positions, I will need to review the exams to understand and evaluate that assertion.

Lundquist Aff., ¶¶ 4-5. These assertions are persuasive. Based on all of the arguments presented, I find the information sought by Plaintiffs is relevant and therefore should be produced.

### C.  *Deliberative Process Privilege*

NYSCS asserts that "if there are any documents related to the preparation of the examination, selection of questions or subject matter, any such documents may be protected by the deliberative process privilege." DE, 28 at p. 3. I disagree. The deliberative process privilege "covers documents reflecting advisory opinions, recommendations, and deliberations that are part of a process by which Government decisions and policies are formulated." *Dep't of the Interior and Bureau of Indian Affairs v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). The privilege is designed to protect the "decision making processes of the executive branch in order to safeguard the quality and integrity of governmental decisions." *A. Michael's Piano, Inc. v. FTC*, 18 F.3d 138, 147 (2d Cir. 1994) (quoting *Hopkins v. HUD*, 929 F.2d 81, 84 (2d Cir. 1991)). In *Hopkins*, the Second Circuit explained that

> there are two requirements for invocation of the deliberative process privilege. First, the document must be "predecisional," that is, "prepared in order to assist an agency decisionmaker in arriving at his decision." *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.,* 421 U.S. 168, 184 (1975). Second, the document must be "deliberative," that is, "actually ... related to the process by which policies are formulated." *Jordan v. United States Dep't of Justice*, 591 F.2d 753, 774 (D.C. Cir. 1978) (en banc). Thus, the privilege "focuses on documents 'reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.' " *Sears*

18

> *Roebuck & Co.,* 421 U.S. at 150 *(quoting Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena,* 40 F.R.D. 318, 324 (D.D.C. 1966)). The privilege does not, as a general matter, extend to purely factual material. [citation omitted]

929 F.2d at 84-85 (emphasis supplied). The doctrine arises under common law and the Freedom of Information Act, Exemption Five, 5 U.S.C. § 552(b)(5) — similar to the context discussed above with regard to NYCRR § 70.2. *See Azon v. Long Island Railroad,* No. 00-CV-6031, 2001 WL 1658219 at *1 (S.D.N.Y. Dec. 26, 2001); *LNC Investments, Inc. v. Republic of Nicaragua*, No. 96-CV-6360, 1997 WL 729106, at * 1 (S.D.N.Y. Nov. 21, 1997). For the deliberative process privilege to apply, an agency document must be "indicative of the agency's thought processes*." Local 3, Int'l Bhd. of Elec. Workers, AFL-CIO ,* 845 F.2d at 1179. Materials that are purely factual and not reflective of the agency's deliberative process are not protected. *Id.* Moreover, the deliberative process privilege is a qualified privilege. *Natural Resources Defense Council, Inc. v. Fox*, No. 94-CV-8424, 1998 WL 158671, at * 5 (S.D.N.Y. Apr. 6, 1998) (citing *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997)). "The privilege may be inapplicable where the agency's deliberations are among the central issues in the case." *Id.* In particular, when the subject of the lawsuit is "the very nature of the decision-making process, the privilege should not foreclose the production of critical information."*Azon*, 2001 WL 1658219 at *3, citing *Marisol A*., 1998 WL 132810 at *6. I find that Plaintiffs have established a sufficient basis to connect the examinations and testing materials to the decision-making process utilized by the County in setting the job requirements for the positions at issue. In doing so, I further find that the County is afforded no refuge under the "deliberative process" privilege to decline production of the documents at issue.

19

## V. CONCLUSION

In view of the foregoing information, the motion for a protective order by the County and NYSCS precluding the deposition of Commissioner Wall is GRANTED. The motion for a protective order precluding the production of the civil service examinations and related materials at issue is DENIED. However, Plaintiffs state that they have offered to enter into "an extremely restrictive Protective Order which would limit dissemination to counsel and their expert witness." I am therefore directing the parties to confer in good faith to come up with an appropriate Stipulation and Order of Confidentiality which should be submitted to me at the earliest possible date to be reviewed and "so ordered."

**SO ORDERED.**

Dated: Central Islip, New York
March 2, 2007

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge