UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
HELEN EBBERT, PAMELA EDWARDS,
ISABELLA MINNECI, WENDY MURO,
FRANCES KAMERER, LORI CONKLIN and
all others similarly situated,

                 Plaintiffs,

**MEMORANDUM AND ORDER**
-against-
No. 05-CV-5445 (FB) (AKT)

NASSAU COUNTY, NASSAU COUNTY
POLICE DEPARTMENT, NASSAU COUNTY
CIVIL SERVICE COMMISSION and THOMAS
R. SUOZZI, in his official capacity,

                 Defendants.
------------------------------------------------------------x

*Appearances:*
*For the Plaintiffs:*
HERBERT EISENBERG, ESQ.
Eisenberg & Schnell, LLP
377 Broadway, 9th floor
New York, NY 10013

JANICE GOODMAN, ESQ.
Law Offices of Janice Goodman
275 Seventh Avenue, Suite 2300
New York, NY 10001

*For the Defendants:*
LORNA B. GOODMAN, ESQ.
Nassau County Attorney
By: CARL S. SANDEL, ESQ.
One West Street
Mineola, NY 11501

**BLOCK, Senior District Judge:**

        Plaintiffs, both individually and as representatives of a proposed class, sue defendants Nassau County ("the County"), the Nassau County Police Department ("NCPD") and the Nassau County Civil Service Commission ("NCCSC"), alleging violations of the Equal Pay Act, 29 U.S.C. §§ 206(d), and New York State Equal Pay Act, N.Y. Lab. Law §§ 194 *et seq.*; they also sue defendant Thomas R. Suozzi in his official

capacity as the Nassau County Executive, alleging intentional discrimination in violation of 42 U.S.C. § 1983. By stipulation and order dated August 3, 2006, the action was bifurcated to separate the issue of liability from damages. *See* Docket Entry # 20. Plaintiffs move (1) to proceed as a collective action for violations of the federal Equal Pay Act pursuant to 29 U.S.C. § 216(b); and (2) to certify their suit as a class action for violations of the New York State Equal Pay Act and 42 U.S.C. § 1983 pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(2). For the reasons stated below, plaintiffs' motion is granted.

I.

The following facts are taken from the parties' submissions. Unless otherwise noted, they are undisputed.

Plaintiffs Helen Ebbert, Pamela Edwards, Isabella Minneci and Wendy Muro are four women employed by the County as Police Communication Officers ("PCOs"). Frances Conklin and Lori Kamerer, also women, were initially employed as PCOs; they were promoted to the position of Police Communication Officer Supervisors ("PCOSs") in December 2000 and January 2004, respectively. The County currently employs approximately 172 PCOs and PCOSs; over 90% are female.

Plaintiffs allege that defendants discriminated against them and the class they seek to represent by paying them wages lower than the wages paid to men for the performance of substantially equal work: Specifically, plaintiffs compare their salaries to those of the all-male force of approximately 32 Fire Communication Technicians ("FCTs") and Fire Communication Technician Supervisors ("FCTSs"); according to plaintiffs, no woman has ever been employed as an FCT or FCTS.

2

The pay scales for all four positions are determined by Nassau County's civil service grade ranking system; within each grade, there are steps which correlate to seniority and compensation. At all times relevant to this action, FCTs and FCTSs were ranked at salary grades 10 and 12, respectively. Prior to October 2001, PCOs were ranked at salary grade 7 and PCOSs at grade 10. In October 2001, PCOs were elevated to grade 9 and PCOSs to grade 11; they did not, however, receive "vertical upgrades" to maintain them at their pre-elevation steps. For example, Ebbert went from grade 7, step 11, to grade 9, step 8; Edwards went from grade 7, step 4, to grade nine, step 1. On May 11, 2005, the Nassau County Legislature elevated the PCOs and PCOSs to grades 10 and 12, respectively, thereby equalizing them in grade with the FCTs and FCTSs, but not in step.

Plaintiffs claim that they have been paid between $1,500 and $10,000 per year less than FTCs and FCTSs of equal seniority, and that they continue to be paid less because they were not given vertical upgrades in October 2001.

Despite the current parity in pay grade, defendants maintain that the positions of PCO and PCOS are not substantially similar to those of FCT and FCTS. Furthermore, they contend that plaintiffs were not entitled to vertical upgrades because under the collective bargaining agreement between the County and the Civil Service Employees Association, Inc., "[i]f an employee is promoted or otherwise moves to a higher grade . . . the employee will move to the step on the higher grade which provides a salary no less than the employee's original salary plus $1,000." Aff. of Karl Kampe (Executive Dir. of NCCSC) ¶ 6.

## II.

Section 216(b) of the Fair Labor Standards Act ("FLSA") permits employees to sue "for and in behalf of . . . themselves and other employees similarly situated" for violations of the Equal Pay Act. 29 U.S.C. § 216(b). Although the phrase "similarly situated" is not defined in FLSA or its implementing regulations, "courts have held that plaintiffs can meet this burden by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997) (collecting cases). A collective action under § 216(b) is a substitute for a traditional class action under Rule 23: "[T]he prevailing view among federal courts, including courts in this Circuit, is that § 216(b) collective actions are *not* subject to Rule 23's strict requirements" for class certification. *Id.* at 263 (collecting cases); *see also Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005) ("The requirements of Fed. R. Civ. P. 23 do not apply to the approval of a collective action and thus no showing of numerosity, typicality, commonality and representativeness need be made." (internal quotation marks and citation omitted)).

Section 216(b) further provides, however, that "[n]o employee shall be a party plaintiff to any [collective] action unless he gives his consent in writing to become such a party." 29 U.S.C. § 216(b). "Thus, under [ ] FLSA, potential plaintiffs must 'opt in' to a collective action to be bound by the judgment (and to benefit from it)." *Hoffmann*, 982 F. Supp. at 260.

4

The Supreme Court, acknowledging that collective actions under § 216(b) "allow[ ] . . . discrimination plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources," and benefit the judicial system "by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity," also noted that "[t]hese benefits . . . depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). Accordingly, the Court reasoned, "[s]ection 216(b)'s affirmative permission for employees to proceed on behalf of those similarly situated must grant the court the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure," *id.* (citing Fed. R. Civ. P. 83); this procedural authority includes the "discretion, in appropriate cases, to implement [§ 216(b)] . . . by facilitating notice to potential plaintiffs," *id.* at 169.

Here, plaintiffs have met their burden "by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law," *Hoffman*, 982 F. Supp. at 261, namely, that as a result of a common pay scale, they were paid wages lower than the wages paid to men for the performance of substantially equal work.[1] Since the willfulness of the alleged FLSA

---

[1] At oral argument, defendants' counsel noted that the 10% of PCOs and PCOSs who are men are also subject to the same pay scale. While this fact may well bear on plaintiffs' ability to prove pay discrimination based on gender, the focus of the § 216(b) inquiry "is not on whether there has been an actual violation of law but rather on

5

violations is disputed, the class of potential plaintiffs shall be defined as all women employed by the County as PCOs and/or PCOSs on or after November 18, 2002, three years prior to the commencement of this action. *See Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 369 (S.D.N.Y. 2007) ("FLSA has a two-year statute of limitations except in the case of willful violations, for which the statute of limitations is three years. Where wilfulness is disputed, the court applies the three-year statute of limitations for purposes of certifying a representative action." (internal citation omitted)).

Plaintiffs have already begun the process of securing the requisite consents of their fellow employees; the Court approves and accepts the opt-in forms executed by individual PCOs and PCOSs, attached as exhibits to the September 22, 2006 affidavit of Janice Goodman, Esq., and deems those individuals members of the collective action. Plaintiffs now seek an order directing them to serve notice of the collective action and opportunity to opt in on the remaining potential plaintiffs. Pursuant to its authority under *Hoffman-La Roche*, the Court directs plaintiffs to submit a proposed notice and opt-in form within ten days of this Memorandum and Order.

### III.

In order for their claims under the New York State Equal Pay Act and § 1983 to proceed as a class action under Rule 23, plaintiffs must satisfy the four prerequisites of Rule 23(a) – numerosity, commonality, typicality and adequacy of representation.

---

whether the proposed plaintiffs are 'similarly situated' ... with respect to their allegations that the law has been violated." *See Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005).

Defendants concede that plaintiffs have met each of these four prerequisites.

Plaintiffs must also satisfy one of the three conditions set forth in Rule 23(b); in that regard, they assert that class certification is appropriate under Rule 23(b)(2) because "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). Interpreting this language, the Second Circuit held in *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147 (2d Cir. 2001), that:

> when presented with a motion for (b)(2) class certification of a claim seeking both injunctive relief and non-incidental monetary damages, a district court must consider the evidence presented at a class certification hearing and the arguments of counsel, and then assess whether (b)(2) certification is appropriate in light of the relative importance of the remedies sought, given all of the facts and circumstances of the case. The district court may allow (b)(2) certification if it finds in its informed, sound judicial discretion that (1) the positive weight or value to the plaintiffs of the injunctive or declaratory relief sought is predominant even though compensatory or punitive damages are also claimed, and (2) class treatment would be efficient and manageable, thereby achieving an appreciable measure of judicial economy.

*Id.* at 164 (internal quotation marks and citations omitted). The court further held:

> Although the assessment of whether injunctive or declaratory relief predominates will require an ad hoc balancing that will vary from case to case, before allowing (b)(2) certification a district court should, at a minimum, satisfy itself of the following: (1) even in the absence of a possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought; and (2) the injunctive or declaratory relief sought would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits. Insignificant or sham requests for

7

> injunctive relief should not provide cover for (b)(2) certification of claims that are brought essentially for monetary recovery.

*Id.* (citation omitted).

The parties do not dispute that "class treatment would be efficient and manageable." *Robinson*, 267 F.3d at 164. As to whether "the injunctive . . . relief sought is predominant even though compensatory . . . damages are also claimed," *id.*, defendants contend that "the wages paid to PCO[s] and [PCOSs] are equal to that of [FCTs] and [FCTSs] and were equalized more than 18 months before this Complaint was filed"; therefore, "it is obvious that the injunctive relief sought is already in effect and not necessary or appropriate." Def.'s Mem. of Law in Opp'n at 6. In response, plaintiffs argue: "Absent the equitable relief sought by Plaintiffs, nothing stops Defendants from deciding tomorrow to pay [FCTs] and [FCTSs] more than PCOs and PCOSs. Plaintiffs' claims for injunctive and declaratory relief predominate precisely because defendants continue to contend that these jobs are *not* substantially similar under the law." Pl.'s Reply Br. in Supp. at 4.

Applying the Second Circuit's holding in *Robinson*, the Court can, "at a minimum, satisfy itself" that (1) "even in the absence of a possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive . . . relief sought" since a dispute still exists as to plaintiffs' entitlement to vertical upgrades; and (2) "the injunctive . . . relief sought would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits," 267 F.3d at 164, since defendants insist, despite the leveling in pay grade, that the positions of PCO and PCOS are not substantially

8

similar to those of FCT and FCTS, and could, as plaintiffs argue, decide to elevate the latter in pay grade without giving a commensurate grade elevation to the former.

Accordingly, plaintiffs' motion to certify their claims under the New York State Equal Pay Act and § 1983 as a class action pursuant to Rules 23(a) and 23(b)(2) is also granted. With respect to the claims under the New York State Equal Pay Act, the class shall be comprised of all women employed by the County as PCOs and/or PCOSs on or after November 18, 1999, six years prior to the commencement of this action. *See Patrowich v. Chemical Bank*, 470 N.Y.S.2d 599, 604 (1st Dep't 1984) (applying six-year statute of limitations to New York State Equal Pay Act claim). With respect to the claims under 42 U.S.C. § 1983, the class shall be similarly defined except for the time frame: The class shall be comprised of all women employed by the County as PCOs and/or PCOSs on or after November 18, 2002, three years prior to the commencement of this action. *See Patterson v. County of Oneida*, 375 F3d 206, 225 (2d Cir. 2004) ("[T]he statute of limitations applicable to claims brought under § 1983 in New York is three years.").

## IV.

When a claim for injunctive relief is certified as a class action pursuant to Rule 23(b)(2), notice to the class is discretionary. *Compare* Fed. R. Civ. P. 23(c)(2)(A) ("For any class certified under 23(b)(1) or (2), the court *may* direct appropriate notice to the class." (emphasis added)), *with Larsen v. JBC Legal Group, P.C.*, 235 F.R.D. 191, 196 (E.D.N.Y. 2006) ("Rule 23(b)(2) does not require notice or permit class members the opportunity to opt-out."). A claim for injunctive relief coupled with a claim for damages, however, "poses a due process risk because [Rule 23(b)(2)] does not expressly afford the procedural

protections of notice and opt out." *Robinson*, 267 F.3d at 166. In *Robinson*, the Second Circuit explained how a district court should exercise its discretion to eliminate this risk:

> [A]ny due process risk posed by (b)(2) class certification of a claim for non-incidental damages can be eliminated by the district court simply affording notice and opt out rights to absent class members for those portions of the proceedings where the presumption of class cohesion falters – i.e., the damages phase of the proceedings.

*Id.*

*Robinson*'s guidance applies here: The claims for injunctive and monetary relief both present a common legal issue, namely, whether PCOs and PCOSs perform work substantially equal to that of FCTs and FCTSs. If that issue is resolved in favor of the class, class members will be entitled to injunctive relief and damages; if not, they will not be entitled to either form of relief. Until that issue is decided, class members' interests are adequately protected and no notice is required. *Cf. id.* at 166 n.10 ("For those stages of this case where the interests of the class members are essentially identical (i.e., the liability phase of the pattern-or-practice suit . . . ), the due process rights of absent class members are ensured by adequate class representation alone."). If the class succeeds at the liability phase, the Court will revisit the issue of what notice should be given to class members before proceeding to the damages phase.

**SO ORDERED.**

/signed/
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
August 9, 2007