UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
HELEN EBBERT, PAMELA EDWARDS,
ISABELLA MINNECI, WENDY MURO,
FRANCES KAMERER, LORI CONKLIN and all
others similarly situated,

                Plaintiffs,

  -against-

NASSAU COUNTY, NASSAU COUNTY POLICE
DEPARTMENT, NASSAU COUNTY CIVIL
SERVICE COMMISSION and THOMAS R.
SUOZZI, in his official capacity,

                Defendants.
----------------------------------------------------------x

**MEMORANDUM AND ORDER**
No. 05-CV-5445 (FB) (AKT)

*Appearances:*

*For the Plaintiffs:*
HERBERT EISENBERG, ESQ.
Eisenberg & Schnell, LLP
377 Broadway, 9th floor
New York, NY 10013

JANICE GOODMAN, ESQ.
Law Offices of Janice Goodman
275 Seventh Avenue, Suite 2300
New York, NY 10001

*For the Defendants:*
LORNA B. GOODMAN, ESQ.
Nassau County Attorney
By: LAUREN CHARTAN, ESQ.
     JEANNEAN ROGERS, ESQ.
     RYAN SINGER, ESQ.
     Deputy County Attorneys
One West Street
Mineola, NY 11501

**BLOCK, Senior District Judge:**

        Plaintiffs sue Nassau County ("the County"), alleging violations of the federal Equal Pay Act ("EPA"), 29 U.S.C. § 206(d), the New York State Equal Pay Act ("NYEPA"), N.Y. Lab. Law § 194, and 42 U.S.C. § 1983.[1] They allege, in essence, that the County's Police Communications Officers ("PCOs") and Police Communications Officer Supervisors ("PCOSs")

---

[1] Plaintiffs have withdrawn their claims against the Nassau County Police Department, the Nassau County Civil Service Commission, and Thomas R. Suozzi, in his official capacity as Nassau County Executive. *See* Pls.' Mem. of Law at 25.

are paid less than its Fire Communications Technicians ("FCTs") and Fire Communications Technician Supervisors ("FCTSs") for substantially equal work. Over 90% of PCOs and PCOSs are women; 100% of FCTs and FCTSs are men.

The County now moves for summary judgment. For the following reasons, the motion is granted in part and denied in part.

## I. Background

County employees are paid according to a grade-step matrix common to many civil-service systems. For each position, the County's Civil Service Commission establishes a pay grade. Within each grade are twelve steps roughly corresponding to seniority; generally speaking, an employee moves up one step within his or her pay grade after each year of service until he or she reaches the top of the pay scale after approximately 12 years.

Since at least 1999, FCTs have been classified as Grade 10, and FCTSs as Grade 12. Prior to 2001, PCOs and PCOSs were classified as Grade 7 and Grade 10, respectively. In 2001, PCOs were upgraded to Grade 9 and PCOSs to Grade 11; at the same time, however, PCOs and PCOSs *lost* several steps in the new pay grades. The reasons for this "downstep" are not clear from the record, but it was obviously contrary to the general rule of a one-step increase per year, which continued for FCTs and FCTSs. Thus, for example, PCO Pamela Edwards went from Grade 7-Step 3 to Grade 9-Step 1, while FCT Joseph Balletta, went from Grade 10-Step 3 to Grade 10-Step 4.

In 2005, PCOs and PCOSs were once again upgraded, to grades 10 and 12, respectively. Although the upgrade brought PCOs and PCOSs to the same pay grade as FCTs and FCTSs, some pay disparities persisted due to the 2001 "downstep": In 2005, PCO Edwards's base pay was $47,681 (Grade 10-Step 5), while that of FCT Balletta, her erstwhile contemporary, was

$50,782 (Grade 10-Step 8).

In sum, the pay disparities between PCOs and PCOSs, on the one hand, and FCTs and FCTSs, on the other, fall into three categories: Between 1999 and 2001, the disparities were due to the three-level difference in pay grade between PCOs and FCTs and the two-level difference between PCOSs and FCTSs. Between 2001 and 2005, the disparities were due to a one-level difference in pay grade *plus* the step reduction for PCOs and PCOSs. Since 2005, the disparities have been due solely to the continuing effects of the 2001 step reduction.

In their complaint, dated November 19, 2005, plaintiffs allege that the past and continuing pay disparities violate the EPA and NYEPA because PCOs/PCOSs and FCTs/FCTSs perform substantially equal work. They seek unpaid wages and liquidated damages from 1999, as well as prospective injunctive relief requiring the County to elevate them to the salary steps occupied by FCTs/FCTSs of equal seniority. Plaintiffs also assert a claim for compensatory and punitive damages under § 1983, on the ground that the disparities amount to intentional sex discrimination.

On August 9, 2007, the Court granted plaintiffs' motion to have the case proceed as a collective action pursuant to 29 U.S.C. § 216(b) with respect to the EPA claim, and as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) with respect to the NYEPA and § 1983 claims. *See Ebbert v. Nassau County*, 2007 WL 2295581, at *1 (E.D.N.Y. Aug. 9, 2007).

## II. EPA/NYEPA

The EPA provides that no employer may

> [pay] wages to employees . . . at a rate less than the rate at which he pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working

> conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex[.]

29 U.S.C. § 206(d)(1). The NYEPA imposes an identical prohibition. *See* N.Y. Lab. L. § 194.

Both the EPA and the NYEPA authorize recovery of unpaid wages, attorney's fees and costs. *See* 29 U.S.C. § 216(b); N.Y. Lab. L § 198. Both statutes also allow for liquidated damages: The EPA requires liquidated damages in an amount equal to unpaid wages, *see* 29 U.S.C. § 216(b), unless "the employer shows to the satisfaction of the court that the act or omission giving rise to the action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [EPA]." *Id.* § 260. The NYEPA requires liquidated damages "equal to twenty-five percent of the total amount of wages found to be due" upon a finding that "the employer's failure to pay the wage . . . was willful." N.Y. Lab. L. § 198.

To prevail on a claim under the EPA, the plaintiff must prove that "[1] the employer pays different wages to employees of the opposite sex; [2] the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and [3] the jobs are performed under similar working conditions." *Lavin-McEleney v. Marist Coll.*, 239 F.3d 476, 480 (2d Cir. 2001) (internal quotation marks and citation omitted). The NYEPA requires an identical showing. *See, e.g.*, *Hart v. Dresdner Kleinwort Wasserstein Sec., LLC*, 2006 WL 2356157, at *5 (S.D.N.Y. Aug. 9, 2006). The County argues that plaintiffs have failed to establish the first two elements.

## A. "Different Wages to Employees of the Opposite Sex"

It is undisputed that, until 2005, the pay scale for PCOs was less than that for FCTs, while the pay scale for PCOSs was less than that for FCTSs. It is also undisputed that, because of the 2001 "downstep," disparities in base pay persist despite the 2005 equalization of the pay scales. The County nevertheless argues that plaintiffs have failed to establish that PCOs and PCOSs were paid less than FCTs and FCTSs.

In support of its contention, the County cites evidence that if overtime and holiday pay are included, certain plaintiffs received *total remuneration* in excess of certain FCTs. But the EPA and NYEPA speak in terms of *rate of pay*, not total remuneration. *See* 29 U.S.C. § 206(d)(1); N.Y. Lab. L. § 194. Thus, while it is true that "wages" includes, *inter alia*, "premium payments for work on Saturdays, Sundays, holidays, regular days of rest or other days or hours in excess or outside of the employee's regular days or hours of work," 29 C.F.R. § 1620.10, it is only the rate at which such payments are made that matters. *See id.* § 1620.12 ("The term ['wage rate'] includes the rate at which overtime compensation or other special remuneration is paid as well as the rate at which straight time compensation for ordinary work is paid.").

5

As a matter of common sense, total remuneration cannot be the proper point of comparison. If it were, an employer who pays a woman $10 per hour and a man $20 per hour would not violate the EPA or the NYEPA as long as the woman negated the obvious disparity by working twice as many hours. Neither Congress nor the New York Legislature could have intended such an absurd result.

**B. "Equal Work on Jobs Requiring Equal Skill, Effort, and Responsibility"**

With regard to the second element, "the identification of a comparator employed by the same employer and of the opposite gender is an indispensable requirement for a plaintiff bringing an Equal Pay Act Claim." *Morris v. Fordham Univ.*, 2004 WL 906248, at *4 (S.D.N.Y. Apr. 28, 2004). However, "a plaintiff need not demonstrate that her job is identical to a higher paid position, but only must show that the two positions are substantially equal in skill, effort, and responsibility." *Levin-McEleney*, 239 F.3d at 480 (citation, internal quotation marks and alterations omitted). The focus is on "job content and not job title or description." *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1310 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998). The Second Circuit has repeatedly admonished that "[w]hether two positions are 'substantially equivalent' for Equal Pay Act purposes is a question for the jury." *Lavin-McEleney*, 239 F.3d at 480; *see also Tomka*, 66 F.3d at 1311 ("[I]t is for the trier of fact to decide if [there] is a significant enough difference in responsibility to make the jobs unequal.").

As an initial matter, the County argues that plaintiffs cannot identify any appropriate male comparators because PCOs/PCOSs and FCTs/FCTSs "work in entirely different divisions" and are, therefore, supervised by different commanding officers. Defs.' Mem. of Law. at 25. While different work units and supervisors can make comparisons inapt, that is only true when the

6

differences bear on the nature of the work performed. *See Lavin-McEleney*, 239 F.3d at 480 (distinguishing cases "in which courts found that the plaintiff had offered insufficient evidence that jobs in different departments were substantially equal"). No case stands for the proposition that a woman performing the same job as a man cannot make a valid comparison simply because she works in a different department.

The County next argues that a prior decision of this Court forecloses, as a matter of *stare decisis*, plaintiffs' claim that PCOs perform substantially equal work as FCTs. In *AFSCME v. County of Nassau*, 799 F. Supp. 1370, 1372 (E.D.N.Y. 1992), Judge Glasser concluded that "the differences in responsibilities and in independent judgment required for these two positions – as well as the differences in training and in experience – establish that the job titles of police communications operator and of fire communications technician are not substantially similar." *Id.* at 1408. Importantly, however, Judge Glasser's determination was a finding of fact made after a bench trial. *See id.* at 1373. "The doctrine of *stare decisis* does not apply to the determination of the facts of a case." 18 James Wm. Moore et al., *Moore's Federal Practice* ¶ 134.05[3] (3d ed. 1999).

The Court must, therefore, reach the crux of the parties' dispute – whether PCOs/PCOSs and FCTs/FCTSs perform substantially equal work. Plaintiffs have offered ample evidence that PCOs and PCOSs perform essentially the same functions and tasks as FCTs and FCTSs: Both answer emergency calls, take information regarding the nature of the emergency and enter the information into a computer system, which identifies the appropriate response protocol. Both then dispatch emergency personnel, if appropriate.

In response, the County points out several differences between PCOs and PCOSs, on the one hand, and FCTs and FCTSs, on the other:

- FCTs and FCTSs are required to have five years' experience as a volunteer fire fighter, while PCOs and PCOSs must have only two years' experience in radio or telephone communications.

- PCOs and PCOSs receive mandatory breaks, including one hour-long lunch break, four 30-minute breaks and one 15-minute "floating break," while FCTs and FCTSs receive only one 45-minute break at the discretion of their supervisor.

- FCTs and FCTSs are always on call, while PCOs and PCOSs are required to work only their scheduled shifts.

- FCTs and FCTSs are qualified to provide medical assistance to callers, while PCOs and PCOSs must forward requests for medical assistance to another unit.

- FCTs and FCTSs operate a "Field Communications Vehicle," which is used as a remote communications center at emergency sites.

These differences may certainly be presented to a jury as grounds for a finding that PCOs/PCOSs and FCTs/FCTSs do not perform substantially equal work. They are not determinative, however, because there is evidence in the record that tends to counterbalance them. For example, it is far from clear that the requirement of five years' service as a volunteer firefighter has a significant bearing on actual job performance apart from the amorphous "knowledge of what [the on-site emergency

personnel] are going into and the stress they are about to undertake if there is a fire." Spaulding Dep. at 23. The increased availability of breaks for PCOs and PCOSs is arguably offset by (a) the much greater call volume that PCOs and PCOSs handle, and (b) a requirement that they work an extra 12-hour shift every seven weeks to make up that time. With respect to the differences in job responsibilities, the Field Communications Vehicle is rarely used, and some FCTs/FCTSs have never been called upon to operate it. The medical assistance provided by FCTs and FCTSs is largely limited to reading a computer-generated response based on information taken from the caller, *see* Albers Dep. at 131 ("You must read directly what's on the card, which is the same as the computer. It must be line by line. You cannot make anything up."); moreover, while PCOs and PCOSs do not perform that identical task, they provide non-medical assistance to callers in equally high-stress situations.

The Court also finds relevant that in connection with the 2005 upgrade, County Executive Thomas Suozzi issued a press release recognizing that "female 911 operators . . . have historically been paid less than their male counterparts in fire communication," Eisenberg Affirmation, Ex. C; the press release further stated: "Today we are calling for equal pay for equal work – it's the right thing to do." *Id.* This is at least some evidence that the County thought that PCOs/PCOSs and FCTs/FCTSs were performing substantially equal work. *See* Fed. R. Evid. 801(d)(2)(D) ("A statement is not hearsay if . . . [t]he statement is offered against a party and is . . . a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship"; *Zaken v. Boerer*, 964 F.2d 1319, 1323 (2d Cir. 1992) (holding that statement by company's vice president "that [an employee] was fired because of her pregnancy was admissible against [the company] under Rule 801(d)(2)(D)"). While

9

the County's voluntary action is to be commended, the effects of the disparities still remain. In addition, a jury could reasonably find that the pay scales should have been equalized sooner.

The Court is well aware that in some cases "two positions may be so different . . . that no reasonable juror could conclude that they are 'substantially equal.'" *Drury v. Waterfront Media, Inc.*, 2007 WL 737486, at *3 (S.D.N.Y. Mar. 8, 2007); *see also Guglielmo v. Marchon Eyewear, Inc.*, 2006 WL 398617, at *8 (E.D.N.Y. Feb. 16, 2006) ("[N]o reasonable juror faced with the record in this action could conclude that Plaintiff and Squillace performed equal work at Marchon."). Based on the record in *this* case, however, the Court cannot say that the differences are sufficiently great to decide the issue as a matter of law.

**C. The County's Affirmative Defenses**

*1. "Factor Other Than Sex" Defense*

Once a plaintiff makes out a *prima facie* violation of the EPA, "the burden of persuasion shifts to the defendant to show that the wage disparity is justified by one of the affirmative defenses provided under the Act: '(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.'" *Belfi v. Prendergast*, 191 F.3d 129, 136 (2d Cir. 1999) (quoting 29 U.S.C. § 206(d)(1)). "[T]o establish the 'factor other than sex' defense, an employer must also demonstrate that it had a legitimate business reason for implementing the gender-neutral factor that brought about the wage differential." *Id.* "[T]he plaintiff may counter the employer's affirmative defense by producing evidence that the reasons the defendant seeks to advance are actually a pretext for sex discrimination." *Id.*

The County argues that the pay disparity between PCOs/PCOSs and FCTs/FTCSs

results from the requirement, noted above, that FCTs and FTCSs have five years' experience in a volunteer fire department. Because FCTs and FTCSs have that additional training and experience, the argument goes, they are able to command a higher wage in the workforce.

Because the County bears the burden of proving its affirmative defense, *see Belfi*, 191 F.3d at 136, it "cannot attain summary judgment unless the evidence . . . on that issue is conclusive." *Torres Vargas v. Santiago Cummings*, 149 F.3d 29, 35 (1st Cir. 1998); *accord Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) ("[I]f the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." (alteration omitted)). The record does not conclusively establish either that the pay disparities were due to the experience requirement for FCTs and FCTSs, or that the experience requirement was instituted for a valid business reason, and not as a pretext for sex discrimination.

## 2. Statute of Limitations

A claim under the EPA "shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). To demonstrate willfulness and avail themselves of the extended statute of limitations, plaintiffs must prove "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).

The parties dispute whether there is sufficient evidence of willfulness. The County

11

argues that it maintained disparate pay scales in reasonable reliance on Judge Glasser's 1992 finding that the disparity did not violate the EPA. Plaintiffs respond that Suozzi's 2005 demonstrate that the County was aware that the disparate pay scales were unlawful.

Whether plaintiffs' EPA claims are subject to a two-year or a three-year statute of limitations, their NYEPA claims will reach back six years. *See* N.Y. Lab. Law § 198 ("[A]n action to recover upon a liability imposed by this article must be commenced within six years."). Accordingly, plaintiffs will be allowed to present evidence of pay disparities going back six years prior to the filing of the complaint – that is, to 1999 – regardless of whether the disparities were the result of willful violations of the law.

At some point, of course, the willfulness issue will need to be resolved because it will affect (1) whether double damages under the EPA will be based on total unpaid wages going back to 2003 or 2002, and (2) whether 25% damages for the remainder of the period since 1999 will be available under the NYEPA. As the County recognizes, however, its statute of limitations defense affects only the amount of damages each plaintiff may recover; since the parties have agreed to bifurcate this action into liability and damages phases, the Court will wait until the end of the liability phase to determine whether there is sufficient evidence of wilfullness to submit the issue to the jury.

### III. § 1983

Under the EPA and NYEPA, "proof of the employer's discriminatory intent is not necessary for the plaintiff to prevail on her claim." *Belfi*, 191 F.3d at 136. By contrast, plaintiffs' § 1983 claim alleges that "[t]he acts, practices and policies of [the County] constitute ongoing intentional discrimination against the individual plaintiffs and the plaintiff class in violation of 42 U.S.C. § 1983." Compl. ¶ 37. While this allegation is not a model of clarify, its reference to "intentional discrimination" suggests that plaintiffs rely on the Equal Protection Clause of the Fourteenth Amendment.

Employment discrimination claims under the Equal Protection Clause are evaluated under the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 123 (2d Cir. 2004). The Second Circuit recently described that framework as follows:

> [T]he plaintiff bears the initial burden of establishing a prima facie case of discrimination. . . . If the plaintiff does so, the burden shifts to the defendant to articulate some legitimate, non-discriminatory reason for its action . . . . If such a reason is provided, plaintiff may no longer rely on the presumption raised by the prima facie case, but may still prevail by showing, without the benefit of the presumption, that the employer's determination was in fact the result of . . . discrimination.

*Holcomb v. Iona College*, 521 F.3d 130, 138 (2d Cir. 2008) (citations and internal quotation marks omitted). "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). "[I]n attempting to satisfy this burden, the plaintiff . . . must be afforded the 'opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Id.* (quoting *Burdine*, 450 U.S. at 253).

To make out a *prima facie* case of unlawful discrimination, plaintiffs must show: "(1) that [they] belonged to a protected class; (2) that [they were] qualified for the position[s they] held; (3) that [they] suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Holcomb*, 521 F.3d at 138. This burden is "not onerous." *Burdine*, 450 U.S. at 253.

Plaintiffs devote only two pages of their memorandum of law to defending their § 1983 claim. The only specific piece of evidence they point to is – once again – Suozzi's 2005 statements. As set forth above, the Court agrees that those statements are some evidence that the County considers PCOs/PCOSs and FCTs/FCTSs to be performing substantially equal work and, arguably, also shows awareness that the disparity in pay scales violated the EPA. They do not, however, suggest that the County established or maintained those pay scales based on discriminatory animus towards women, particularly since the scales are set, not by Suozzi, but by the County's Civil Service Commission. The Court concludes, therefore, that the statements are not sufficient to establish the fourth element of a *prima facie* case of intentional discrimination under the Equal Protection Clause.

## IV. Conclusion

The County's motion for summary judgment is granted with respect to plaintiffs' § 1983 claim, which is, accordingly, dismissed. As to plaintiffs' EPA and NYEPA claims, the County's motion is denied.

**SO ORDERED.**

_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
March 31, 2009