UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____x

HELEN EBBERT, PAMELA EDWARDS,
ISABELLA MINNECI, WENDY MURO, AND
FRANCES KAMERER, LORI CONKLIN
and all others similarly situated

                Plaintiffs,

            -against-                                05-CV5445 (FB)(AKT)

NASSAU COUNTY, NASSAU COUNTY
POLICE DEPARTMENT, NASSAU COUNTY
CIVIL SERVICE COMMISSION;
THOMAS R. SUOZZI, in his official capacity,

                Defendants.
_____x

### PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

      Subject to Court approval, the parties have settled the class action resolving all claims Plaintiffs raised against Defendants, or which could have been raised, in this Equal Pay Act case alleging unlawful pay disparity between the female dominated job of PCO/PCOS and the all male FCT/FCTS work force. The Stipulation of Settlement and Release ("Settlement Agreement") provides, in its most significant part, a Settlement Fund of Seven Million ($7,000,000) Dollars which is sufficient to assure that each class member will be made whole for the loss of base salary that she should have earned if she were paid equally with her comparable male FCT/FCTS colleagues.

Plaintiffs respectfully request that the Court: (1) grant preliminary approval of the Settlement Agreement (attached to Goodman Affirmation as Exh. A); (2) approve the form of the Notice to the Class agreed to by the parties (attached to Goodman Affirmation as Exh. B); and (3) set a date for the Fairness Hearing which is at least seventy (70) days from the date of Preliminary Approval.

## BACKGROUND

On November 18, 2005, Plaintiffs Ebbert, Edwards, Minneci, Muro and Kamerer filed this collective and class action pursuant to the Equal Pay Act, 29 U.S.C. §§206 (d) *et seq* ("EPA"), the New York State Equal Pay Act, N.Y. Labor Law §§ 194 *et seq* ("NYEPA"), and 42 U.S. C. § 1983. The named Plaintiffs are female Police Communications Officers ("PCO") and Police Communications Officer Supervisors ("PCOS") who claim, on behalf of themselves and those similarly situated, that they are paid less than the Fire Communication Technicians ("FCT") and their supervisors ("FCTS"), all of whom are male, for work that is substantially equal. On June 22, 2006, Nassau County, Nassau County Police Department, The Nassau County Civil Service Commission and Thomas R. Suozzi, County Executive ("referred to collectively as "Defendants") answered disputing all of the material allegations of the Complaint and denying any liability to plaintiffs or the members of their classes. Defendants asserted, among other things, that the claims were *res judicata*, that the Defendants had partial immunity, and that the claims were barred by the statute of limitations. (See Goodman Aff. for all factual statements).

On July 27, 2006, at the joint request of the parties, the Court bifurcated the action separating the issue of liability from damages.

2

On April 20, 2007 Plaintiffs moved to Amend their Complaint to add PCOS Lori Conklin as a Named Plaintiff, which motion was opposed by Defendants. Plaintiffs motion being granted, they served their Amended Complaint on May 29, 2007. Defendants answered the Amended Complaint on June 8, 2007.

On August 9, 2007 the Court granted Plaintiffs' Motion for Class Certification under the NYEPA and 42 U.S.C. §1983 pursuant to Federal Rule 23 (a) and (b)(2) designating and defining the Class as:

> All women employed by the County as PCOs
> and/or PCOSs on or after November 18, 1999.

The Court also certified the class of Opt-ins pursuant to 29 U.S.C. §§206 (d) *et seq.*, and approved Eisenberg & Schnell, LLP, and the Law Offices of Janice Goodman as Class Counsel.

Thereafter, counsel for the Named Plaintiffs, Opt-in Plaintiffs and the members of the classes conducted extensive investigation of the claims; including taking of depositions; interviewing plaintiffs and putative class members; defending depositions taken of all plaintiffs; reviewing and analyzing massive documentary evidence, including thousands of pages of documents provided by Defendants in discovery; site visits to the work facilities; retention of an Expert Witness and defending her deposition as well as taking the deposition of Defendants Expert; engaging in discovery motion practice, responding to Defendants' Motion of Summary Judgment, and preparing a PTO.

There was significant motion practice relating to the Defendants' Experts' Report. Plaintiffs were ultimately successful in precluding substantial sections of these Reports which were determined to be improper.

3

On April 16, 2008, Defendants moved for summary judgment, asserting that Plaintiffs' claims are barred by *stare decisis*; that the undisputed material facts entitle Defendants to judgment as a matter of law; and that the §1983 claims against the County Executive were insufficient to hold him liable. On April 3, 2009, the Court denied Defendants' Motion for Summary Judgment, except to the extent that it dismissed all claims under §1983 and dismissed the action against County Executive Suozzi.

By Order dated June 17, 2010, the Court adopted a pre-trial scheduling order directing the exchange of Stipulated Facts by June 18, 2010; designation of deposition cites by June 29, 2010; the filing of a proposed Pre-trial Order by July 9, 2010 and the setting of a pre-trial conference on July 14, 2010. Simultaneously the Court set a Settlement Conference for July 17, 2010.

Thereafter, extensive settlement discussions, leading to this Settlement Agreement, were conducted under the supervision of Magistrate Judge, Hon. A. Kathleen Tomlinson. In order to evaluate settlement positions, Class Counsel requested of Defendants substantial payroll information which was provided. Thereafter, the Court ordered the retention of an expert, APT Metrics, Inc., to be paid by Defendants, to provide the necessary analysis of the data to determine the loss each class member sustained as a consequence of the alleged discriminatory treatment. This information informed class counsel of the adequacy of the settlement proposal.

Counsel for the parties recognize the risks and costs of prosecuting this action through trial and believe that it is in the interest of all parties to resolve finally and completely the claims of the class members against the County. Therefore, the parties entered the Settlement Agreement for which Plaintiffs request preliminary approval.

4

## SUMMARY OF SETTLEMENT TERMS

### A. Class Member Awards

The Settlement Agreement created a fund of Seven Million ($7,000, 000) Dollars for the class to settle this action ("the Fund"). The Fund covers class members' awards, service awards to the named Plaintiffs; administrative fees and costs for settling any disputes arising out of miscalculations of awards and a *cy pres* award of any unused sums from the Fund.

Specifically, each class member, as defined by the Court, shall be made whole by receiving a back pay amount calculated by a Court designated expert, based on data supplied by the County, measuring damages by the difference between the base pay that the class member should have received had she been at the same grade and step level of a similarly situated FCT and/or FCTS, with the same seniority and what she actually earned during the period November 18, 1999 and June 30, 2011 or the date of termination from employment, whichever first occurred. The individual awards for the class members range from the lowest of about $2,000 to the highest of over $80,000 with most class members receiving an award of between $35,000 and $60,000.

The named Plaintiffs shall each receive a service award of $20,000 for the work, effort and risks that they undertook in pursuing this litigation.

A total of $50,000 has been set aside for the costs of a Settlement Administrator who is charged with hearing any objections raised by a class member who claims that she is a member of the class, but has not received a back pay award, or the back pay award has been miscalculated or is based on incorrect data.

The remainder of the Fund has been set aside to cover any additional payments to those who successfully challenge their award.

Any money remaining in the Fund, after distribution to all class members and all administrative costs have been allocated, shall be equally divided between the two selected non-profit charities: The Employees Rights Advocacy Institute for Law & Policy, Community Legal Assistance Corp. of Hofstra University Law School.

## B.  Attorneys' Fees and Litigation

If the court approves, in addition to the above Fund, Defendants have agreed to pay the following amounts to class counsel:

> Eisenberg & Schnell, LLP, attorney fees in the amount of $355,000 and costs of $1,846.69.  Law Offices of Janice Goodman, attorney fees in the amount of $415,000 and costs of $128,789.

In agreeing to these sums class counsel submitted to Defendants time records reflecting work performed and an itemized statement of litigation costs.

## C.  Settlement Procedure

The parties are following the usual class action settlement procedure which includes (1) this request for preliminary approval; (2) dissemination of a mailed notice to each class member informing them of the settlement together with a summary of the terms; and (3) a Fairness Hearing requesting final approval of the Settlement Agreement at which time the parties will present argument concerning the fairness, adequacy and reasonableness of the settlement and at which any class member may raise objection to the Settlement Agreement, if they first submit in writing a request to be heard.

The approval procedure, in this instance, is somewhat complicated because the Defendant is Nassau County.  The County Legislature has approved the Settlement Agreement and the County Executive has signed the legislative approval.  In addition, on January 26, 2011 the

Nassau County Interim Finance Authority ("NIFA") instituted a control period, pursuant to New York Public Authorities Law Section 3650 *et seq.* which requires NIFA's approval of this Settlement Agreement. In order to advance the process expeditiously, the County is simultaneously submitting the Agreement to NIFA for approval. The parties urge the Court to grant preliminary approval without awaiting NIFA's action.

If these prior approvals are obtained, and the Court issues a Final Order approving the Settlement Agreement, the County shall issue the back pay awards within thirty (30) days of the Court's Order. Class members shall have Fifteen (15) days from receipt of their award to file a Notice of Challenge, if they believe that the settlement award allocated is incorrect. The class member does not lose her award as determined by the original calculation, if her challenge is denied.

The Court retains jurisdiction over the parties and the subject matter of this action for Two (2) Years from the Effective Date of the Settlement Agreement for the sole purpose of entering all orders and judgments that may be necessary to implement and enforce the relief provided in the Settlement Agreement.

## ARGUMENT

### A. Preliminary Approval is Appropriate

There is a "strong judicial policy in favor of settlements, particularly in the class action context. *Wal-Mart Stores, Inc. v Visa U.S.A. Inc.,* 396 F 3d 96, 116 (2d Cir. 2005) (internal quotations omitted). Preliminary approval requires only an initial evaluation of the fairness of the Agreement which only indicates that the Court found sufficient grounds to submit the proposed settlement to the class members for a full hearing on fairness. *In re Traffic Executive Ass'n,* 627

7

F. 2d 631, 633 (2d Cir.1980). It only permits notice to issue to the class and to give members a chance to object or opt out. "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,* 396 F. 3d 96, 116 (2nd Cir. 2005).

The Settlement Agreement entered here was agreed upon only after five (5) years of contested litigation, extensive discovery, including the exchange of expert witness reports and the taking of depositions of the experts, and the denial of Defendants' Motion for Summary Judgment Motion. All negotiations were arms length, under the supervision of Magistrate Judge A. Kathleen Tomlinson, and conducted by attorneys with great experience.

**B.    The Settlement is Fair, Reasonable and Adequate**

The Second Circuit generally considers the facts it laid out in *City of Detroit v. Grinnell Corp.,* 495 F. 2d 448 (2d Cir. 1974) in determining the adequacy of the Settlement. As pertinent to this case, those factors include: (1) expense and complexity of litigation; (2) the stage of the proceedings and the discovery completed; (3) the risks of establishing liability; (4) the risk of establishing damages; (5) the range of reasonableness of the settlement fund in light of the best possible recovery; and (5) the range of reasonableness of the fund to possible recovery in light of all the attendant risks of litigation. *Grinnell,* 495 F. 2d at 463.

As described above, the parties were on the brink of trial, and had begun preparing a Pretrial Order when court supervised settlement discussions began in earnest. All discovery was completed, which left the parties in a perfect position to calculate the risks attendant in continuing to trial and ascertain the reasonableness of this Settlement. The trial would have been lengthy and complicated since Plaintiffs bore the burden of demonstrating that the positions of

8

the PCO/PCOS were substantially equal in terms of skill, effort and responsibility, to the FCT/FCTS. This would require extensive testimony explaining the details of the four (4) jobs being compared respectively. Preparing and putting on evidence would consume a tremendous amount of time and resources, and although Plaintiffs are confident that the merits of their claim warrant a favorable finding, every litigation involves risk.

Most consequentially, at the request of the parties, the case was bifurcated, which meant that discovery on damages would not proceed unless and until liability was determined. Therefore, even assuming Plaintiffs' prevail at trial, there would have been a further significant delay in ascertaining damages, thus delaying monetary relief to class members should they prevail.

In light of the attendant risks, the Settlement is more than reasonable and fair. Indeed, Plaintiffs submit it is an outstanding achievement for every class member. Each class member is receiving dollar for dollar the amount of base pay that she lost as a result of the pay disparity between the respective PCO/PCOS and the FCT/FCTS. She would not have received more in base pay had this case been litigated through judgment. Moreover, there is no cost to the class member for attorneys' fees or litigation costs, since those moneys are not being taken from a common fund. Counsel negotiated their fees totally separate from the negotiations for the Class. The only compromise made by Plaintiffs to obtain this outstanding result is forgoing interest payment on the sums awarded, and foregoing payment on the differential on overtime, both of which would have been available had this matter been pursued to successful judgment. However, Plaintiffs submit that is a small sacrifice in exchange for avoiding the potential of several years of risky litigation to achieve that result.

The special Service Award of Twenty Thousand ($20,000) Dollars each to the six (6) named Plaintiffs is also fair and reasonable. The named Plaintiffs, Helen Ebbert, Pamela Edwards, Isabella Minneci, Wendy Muro, Frances Kamerer and Lori Conklin are responsible for bringing on this action. They participated in the preparation of the complaint; each was subjected to having her deposition taken; they produced documents as required in discovery; and in general took on the responsibility for prosecuting and pursuing the action on behalf of the class. Service awards of this type are commonly awarded. *Damassia v Duane Reade, Inc.*, 2009 WL5841128 (S.D.N.Y. July 27, 2009); *Roberts v Texaco,* 979 F. Supp. 185, 200-01 (S.D.N.Y. 1997); *Yap v Sumitomo Corp.,* 1991 WL29112 (S.D.N.Y; Feb, 21, 1991).

Finally, although the Court does not now have to address the issue of attorney's fees, which counsel will brief for the final hearing, on its face the request is fair and reasonable. The attorneys' fees were negotiated totally separate from and only after agreement was reached as to the Settlement Fund for the Class. Although the amount requested is not being taken from the common fund, it is worth noting that the amount agreed to is a mere 11% of the Settlement achieved for the Class. It is not unusual for awards in the range of 30%-38% of a common fund to be awarded. See: Stefaniak *v. HSBC Bank USA, N.A.* , 2008 WL7630102, *3(W.D.N.Y. June 28, 2008 (holding that a fee award of 33% of the settlement fund is typical in class action settlements in the Second Circuit") (collecting cases); *Gilliam v. Addicts Rehab Ctr. Fund*, 2008 WL782596*5 (S.D.N.Y. Mar. 24, 2008 ([C]lass counsel is entitled to one-third of the common fund…which is consistent with the norms of class litigation in this circuit.")

## CONCLUSION

For the above stated reasons, Plaintiffs' request preliminary approval of the Settlement Agreement; approval of the Notice to the Class and setting of a date for the Fairness Hearing.

Dated: New York, New York
June 9, 2011

Herbert Eisenberg (8796)

*/s/ Herbert Eisenberg*
Attorney for Plaintiffs and the Class
Eisenberg & Schnell
233 Broadway, Suite 2704
New York, New York 10279
212-966-8900

Janice Goodman (0489)

*/s/ Janice Goodman*
Attorney for Plaintiffs and the Class
Law Offices of Janice Goodman
350 Seventh Avenue, Suite 1800
New York, New York 10001
212-869-1940

11