UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
—————————————————————————x

HELEN EBBERT, PAMELA EDWARDS,
ISABELLA MINNECI, WENDY MURO, AND
FRANCES KAMERER, Lori CONKLIN
and all others similarly situated

                           Plaintiffs,

       -against-

                                          05-CV5445 (FB)(AKT)

NASSAU COUNTY, NASSAU COUNTY
POLICE DEPARTMENT, NASSAU COUNTY
CIVIL SERVICE COMMISSION;
THOMAS R. SUOZZI, in his official capacity,

                       Defendants.

—————————————————————————x

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR APPROVAL OF CLASS SETTLEMENT

Janice Goodman (0487)
Law Offices of Janice Goodman
350 Seventh Avenue, Suite 1800
New York, New York 10001
212-869-1940

Herbert Eisenberg (8796)
Eisenberg & Schnell, LLP
233 Broadway, Suite 2704
New York, New York 10279
212-966-8900

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES.................................................................................ii

PRELIMINARY STATEMENT.............................................................................1

BACKGROUND................................................................................................2

    A.    Class Member Awards.........................................................................6

    B.    Attorneys' Fees and Litigation Costs..................................................7

    C.    Settlement Procedure...........................................................................8

ARGUMENT....................................................................................................8

    A.    The Settlement Is Fair, Reasonable and Adequate.............................8

    B.    Attorneys' Fees and Costs...................................................................13

        (1)    Lodestar Method.........................................................................14

            (a)  Hourly Rate.........................................................................14

            (b)  Time Spent.........................................................................16

        (2)    Common Fund Fee Determination.............................................16

    C.    Costs....................................................................................................18

CONCLUSION..................................................................................................19

# TABLE OF AUTHORITIES

Page

## Cases

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*
     522 F.3d 182 (2d Cir. 2008))............................................................................15

*City of Detroit v Grinnell Corp.*
     495 F. 2d 448 (2d Cir. 1974)..............................................................................9

*City of Riverside v. Rivera*
     477 U.S. 561, 580 n. 11 (1986)..........................................................................16

*Damassia v. Duane Reade, Inc.*
     04 Civ. 08819 (GEL), 2009 WL 58411 28 (S.D.N.Y. July 27, 2009)...............................12

*D'Amato v. Deutsche Bank*
     236 F. 3d 78 (2d Cir. 2001)............................................................................9, 12

*Graham v. Sauk Prairie Police Com'n.*
     915 F. 2d 1085 (7th Cir. 1990)........................................................................16, 18

*In re Agent Orange" Prod. Liability Litig.*
     818 F.2d 226 (2d Cir. 1987)............................................................................15

*In re Gilat Satellite Networks, Ltd.*
CV-02-1510 (CPS), 2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007)........................................14

*In re Union Carbide Corp. Consumer prods. Bus. Secs. Litig.*
     724 F. Supp. 169 (S.D.N.Y. 1989)....................................................................17, 18

*Johnson v Georgia Highway Express, Inc.*
     488 F. 2d 714 (5th Cir. 1974)............................................................................18

*McBean v. City of New York*
     233 F.R.D. 377, 392 (S.D.N.Y. 2006)................................................................13, 17

*McDaniel v. County of Schenectady*
     595 F. 3d  411 (2d Cir. 2010)............................................................................13

*Save Our Cumberland Mountains, Inc. v. Hodel*
857 F. 2d 1516 (D.C. Cir. 1988).........................................................................15

*Scotti v. City of New York*
84 Civ. 5462 (JSM) 1991 U.S. Dist. LEXIS 15256 (S.D.N.Y. June 21, 1991)................15

*Simmons v. New York City Transit Authority*
575 F. 3d 170 (2d Cir. 2009)...............................................................................15

*Stefaniak v. HSBC Bank, USA, NA*
Case No. 1-05-CV-7205, 2008 WL 7630102 * 3 (W.D.N.Y., July 8, 2008) ...................17

*Steinberg v. Nationalwide Mut. Ins. Co.*
612 F. Supp. 2d 219 (*E.D.N.Y.* May 5, 2009)..........................................................14

*Strougo v. Bassini*
258 F. Supp. 2d 254 (S.D.N.Y. 2003)....................................................................17

*Wal-Mart Stores, Inc. v Visa U.S.A. Inc.*
396 F 3d 96 (2d Cir. 2005)...................................................................................9

*Wal-Mart v. Dukes*
___ U.S.___, 2011 WL 2437013 (2011)..................................................................11

*Weinberger v. Kendrick*
698 F. 2d 61 (2d Cir. 1982).................................................................................9

## Other Authorities

29 U.S.C. §§206 (d) *et seq*...................................................................................2

42 U.S.C. §1983..............................................................................................2, 3, 4

N.Y. Labor Law §§194 et *seq*.................................................................................2

Federal Rules of Civil Procedure, Rule 23(3)............................................................3, 8

Plaintiffs respectfully request that the Court: (1) grant final approval of the Settlement Agreement (attached as Exh. A to Affirmation of Janice Goodman ("Goodman Aff."); (2) approve class counsels' application for fees in the amount of $355,000 for Eisenberg & Schnell LLP, and $415,000 for the Law Offices of Janice Goodman, and costs in the amount of $2,170.66 for Eisenberg and Schnell, LLP, and $130,080.98 for the Law Offices of Janice Goodman; (3) order that Defendants make back pay  payments to class members within thirty (30) days of entrance of the Final Order approving the Settlement Agreement; (4) order that Defendants pay each named Plaintiff twenty thousand ($20,000) dollars within thirty (30) days of entrance of the Final Order; (5) order that Defendants set aside fifty thousand ($50,000) dollars within thirty (30) days of entrance of the Final Order for the settlement administrator costs; (6) order that Defendants pay attorneys' fees and costs within thirty (30) days of entrance of the Final Order approving the Settlement Agreement; and (7) retain jurisdiction of this matter for two years for the purpose of entering any orders necessary to implement and enforce the Settlement Agreement.

## BACKGROUND

On November 18, 2005, Plaintiffs Helen Ebbert, Pamela Edwards, Isabella Minneci, Wendy Muro and Frances Kamerer filed this collective and class action pursuant to the Equal Pay Act, 29 U.S.C. §§206 (d) *et seq* ("EPA"), the New York State Equal Pay Act, N.Y. Labor Law §§194 et *seq* ("NYEPA") and 42 U.S.C. §1983.  The named Plaintiffs are female Police Communications Officers ("PCO") and Police Communications Officer Supervisors ("PCOS') who claim, on behalf of themselves and those similarly situated, that they are paid less than the Fire Communication Technicians ("FCT") and their supervisors ("FCTS"), all of whom are male, for work that is substantially equal in skill, effort and responsibility.

2

On June 22, 2006, Nassau County, Nassau County Police Department, the Nassau County Civil Service Commission and Thomas R. Suozzi, County Executive (referred to collectively as "Defendants") answered disputing all of the material allegations of the Complaint and denying any liability to Plaintiffs or the members of their classes.  Defendants asserted, among other defenses, that the claims were precluded by the doctrine of *res judicata*; that the Defendants had partial immunity; and that the claims were barred by the statute of limitations.  (See Goodman Aff. for all factual statements).

On July 27, 2006, at the joint request of the parties, the Court bifurcated the action separating the issues of liability and damages.

On April 20, 2007, Plaintiffs moved to amend their Complaint to add PCOS Lori Conklin as a named Plaintiff, which motion was opposed by Defendants.  The Court granted Plaintiffs' motion and Plaintiffs served their Amended Complaint on May 29, 2007.  Defendants Answered the Amended Complaint on June 8, 2007.

On August 9, 2007, the Count granted Plaintiffs' Motion for Class Certification under the NYEPA and 42 U.S.C. §1983 pursuant to Rule 23 (a) and (b)(2) of the Federal Rules of Civil Procedure, defining the Class as:

> All women employed by the County as PCOs
> and/or PCOSs on or after November 18, 1999.

The Court also certified the class of opt-ins pursuant to 29 U.S.C. §§206 (d) *et seq.*, and approved Eisenberg & Schnell, LLP, and the Law Offices of Janice Goodman as class counsel.

Thereafter, counsel for the named Plaintiffs, opt-in Plaintiffs and the members of the classes conducted extensive investigation of the claims, including taking of depositions;

3

interviewing plaintiffs and putative class members; defending depositions taken of all plaintiffs; reviewing and analyzing massive documentary evidence, including thousands of pages of documents provided by Defendants in discovery; attending site visits to the work facilities; retaining an expert witness and defending her deposition as well as taking the deposition of Defendants' expert; engaging in discovery motion practice, responding to Defendants' Motion for Summary Judgment, and preparing of a pre-trial order.

There was significant motion practice relating to the Defendants' experts' reports. Plaintiffs ultimately succeeded in precluding substantial sections of the reports of Defendants' expert which the Court determined to be improper.

On April 16, 2008, Defendants moved for summary judgment, asserting that Plaintiffs' claims are barred by *stare decisis*; that the undisputed material facts entitle Defendants to Judgment as a Matter of Law; and that the §1983 claims against the County Executive were insufficient to hold him liable. On April 3, 2009, the Court denied Defendants' Motion for Summary Judgment, except to the extent that it dismissed claims under §1983 and dismissed the action against County Executive Suozzi.

By Order dated June 17, 2010, the Court adopted a pre-trial scheduling order directing the exchange of stipulated facts by June 18, 2010; designation of deposition cites by June 29, 2010; and the filing of a proposed pre-trial order by July 9, 2010. The Court scheduled a pre-trial conference for July 14, 2010. Simultaneously the Court scheduled a Settlement Conference for July 17, 2010.

Thereafter, the parties engaged in extensive settlement discussions, conducted under the supervision of Magistrate Judge A. Kathleen Tomlinson, which yielded this Settlement

4

Agreement.  To evaluate settlement positions, class counsel requested of Defendants substantial payroll information, which was provided.  Thereafter, the Court ordered the retention of an expert, APT Metrics, Inc., to be paid by Defendants, to provide the necessary analysis of the data to determine the loss each class member sustained as a consequence of the alleged discriminatory treatment.  This information informed class counsel of the adequacy of the settlement proposal, which led to the finalization of the Settlement Agreement presented here for final approval.

On June 10, 2011, The Honorable Frederick Block granted preliminary approval of the Settlement Agreement and directed that the Fairness Hearing for Final Approval be set down before Magistrate Judge A. Kathleen Tomlinson for report and recommendation.  Subsequently, the parties consented to authorizing Judge Tomlinson to conduct all proceedings.  On June 22, 2011, Judge Block issued an Order consenting to the reference.

On June 15, 2011, Judge Tomlinson approved the proposed Notice to the Class of the Settlement Agreement, and set the matter down for hearing on August 30, 2011.  The Defendants provided Plaintiffs' counsel with the names and addresses of all class members.  Notice to the Class, in the form approved by the Court, was mailed on or about July 7, 2011.  A copy of the evidence of mailing is attached as Exh. B to the Goodman Aff.

Pursuant to the Settlement Agreement, class members were given an opportunity to submit objections or to opt-out of the Settlement, which were to be submitted to the Court, with copies to all counsel, no later than August 23, 2011.  To date no objections or opt-outs have been received.

The following are the significant provisions of the Settlement Agreement, which Plaintiffs submit represent a fair and reasonable resolution of the case.

A.      **Class Member Awards.**

The Settlement Agreement created a fund of seven million ($7,000,000) dollars for the class to settle this action ("the Fund"). The Fund covers class members' awards; service awards to the named Plaintiffs; administrative fees and costs for settling any disputes arising out of miscalculations of awards; and a *cy pres* award of any unused sums from the Fund. It does not include attorneys' fees and costs, which Defendants have agreed to pay directly to class counsel.

Specifically, each class member, as defined by the Court, shall be made whole by receiving a back pay amount calculated by a Court designated expert, based on data supplied by the County, measuring damages by the difference between (1) the base pay that the class member should have received had she been at the same grade and step level as a similarly situated FCT and/or FCTS, with the same seniority and (2) what she actually earned during the period November 18, 1999 and June 30, 2011 or the date of termination from employment, whichever first occurred. The individual awards for the class members range from the lowest of about $2,000 to the highest of over $80,000, with most class members receiving an award of between $35,000 and $60,000.

The named Plaintiffs shall each receive a service award of $20,000 for the work, effort and risks that they undertook in pursuing this litigation.

A total of $50,000 has been set aside for the costs of a Settlement Administrator who is charged with hearing any objections raised by a class member who claims that she is a member of the class, but has not received a back pay award, or the back pay award has been miscalculated or is based on incorrect data. To enable class members to make meaningful assessments of the

6

accuracy of their awards, each class member will be provided with a statement of the specific calculations used to determine her back pay award, along with her back pay check.

The remainder of the Fund has been set aside to cover any additional payment to those who successfully challenge their award.

Any money remaining in the Fund, after distribution to all class members and all administrative costs have been allocated, shall be equally divided between the two selected non-profit charities:  The Employees Rights Advocacy Institute for Law & Policy, and the Community Legal Assistance Corp of Hofstra University Law School.

**B.    Attorneys' Fees and Litigation Costs**

Subject to the Court's approval, in addition to (and separate from) the above Fund, Defendants have agreed to pay the following amounts as attorneys' fees and costs directly to class counsel:

- Eisenberg & Schnell, LLP, attorney fees in the amount of $355,000 and costs of $1,846.69.

- Law Offices of Janice Goodman, attorney fees in the amount of $415,000 and costs of $128,789.

In agreeing to these sums class counsel submitted to Defendants time record reflecting work performed and an itemized statement of litigation costs.

Class counsel have incurred additional costs subsequent to settlement, including the cost of providing Notice to the Class, conference calls with the Court, as well as  appearances in Central Islip.  Those costs are Law Offices of Janice Goodman $1,291.98, Eisenberg & Schnell, LLP $323.97.  Goodman Aff. Exh. C, Eisenberg Aff.

7

C.      **Settlement Procedure**

If the Court issues a Final Order approving the Settlement Agreement, as here requested, the County shall issue settlement checks within thirty (30) days of the entrance of the Final Order approving the Settlement Agreement. Class members shall have fifteen (15) days from receipt of their awards to file a Notice of Challenge, if they believe that the settlement award allocated is incorrect. No class member who challenges her award will lose her award as determined by the original calculation, if her challenge is denied.

The Court retains jurisdiction over the parties and the subject matter of this action for two (2) years from the effective date of the Settlement Agreement for the sole purpose of entering all orders and judgments that may be necessary to implement and enforce the relief provided in the Settlement Agreement.

**ARGUMENT**

The Settlement Agreement was entered into only after six (6) years of contested litigation, which included extensive discovery, including the exchange of expert witness reports and the taking of depositions of the experts, and the denial of Defendants' Motion for Summary Judgment. All negotiations were arms' length, conducted under the supervision of Magistrate Judge A. Kathleen Tomlinson, and conducted by attorneys with great experience. See Eisenberg Aff.; Goodman Aff.

A.      **The Settlement is Fair, Reasonable and Adequate**

Rule 23(e) of the Federal Rules of Civil Procedures requires Court approval of any settlement and compromise of a class action law suit. It is the responsibility of the Court to

8

determine whether the "compromise is fair, reasonable and adequate." *Weinberger v. Kendrick*, 698 F. 2d 61, 73 (2d Cir. 1982). There is, however, a "strong judicial policy in favor of settlements, particularly in the class action context. *Wal-Mart Stores, Inc. v Visa U.S.A. Inc.*, 396 F 3d 96, 116 (2d Cir. 2005) (citation omitted). "[T]he Court must consider both the procedural fairness of the settlement negotiations, as well as the substantive fairness of the settlement itself." *Dupler*, 705 F. Supp 2d at 238; see also *D'Amato v. Deutsche Bank*, 236 F. 3d 78, 85 (2d Cir. 2001) ("The District Court determines a settlement's fairness by examining the negotiating process leading up to the settlement as well as the settlement's substantive terms.). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc.*, 396 F. 3d at 116 (citation omitted).

In determining the fairness, adequacy and reasonableness of a Settlement, the Court should look to the nine factors laid out by the Second Circuit in *City of Detroit v Grinnell Corp.*, 495 F. 2d 448 (2d Cir. 1974). Those factors include:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class members to the settlement; (3) the stage of the proceedings and the discovery completed; (4) the risks of establishing liability; (5) the risk of establishing damages; (6) the risk of maintaining the class action through the trial; (7) Defendants' ability to withstand a greater judgment; and (8&9) the range of reasonableness of the Settlement fund in light of the best possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F. 2d at 463.

The proposed Settlement Agreement meets all of the substantive and procedural criteria set forth in *Grinnell* and *D'Amato*.

(1)     <u>Complexity, expense and likely duration of the litigation</u>.  The trial would have

been lengthy and complicated as Plaintiffs bore the burden of demonstrating that the positions of

the PCO/PCOS were substantially equal in terms of skill, effort and responsibility, to the

FCT/FCTS.  Plaintiffs would be required to adduce extensive testimony explaining in detail the

four (4) jobs being compared respectively, requiring many hours of Plaintiffs' expert witnesses'

time at substantial financial cost.  Most consequently, at the request of the parties, the case was

bifurcated, which meant discovery on damages would not proceed unless and until liability was

established.  Therefore, even assuming Plaintiff's prevailed at trial, there would have been a

further significant delay in ascertaining damages, thus delaying monetary relief to class members

for probably at least another year or more.

(2)     <u>The reaction of class members to the settlement</u>.  No class member has objected to

the settlement, nor has any class member opted out.

(3)     <u>The stage of the proceedings and the discovery completed</u>.  The parties were on the

brink of trial, and had begun preparing a pretrial order when Court supervised settlement

discussions began in earnest.  All discovery was completed, which left the parties in a perfect

position to calculate the risks attendant in continuing to trial and to ascertain the reasonableness of

this Settlement.

(4)     <u>The risks of establishing liability</u>.  Although Plaintiffs are confident that the

merits of their claim warrant a favorable finding, every litigation involves risk.  Notwithstanding

the denial of Defendants' Motion for Summary Judgment, and the existence of genuine issues of

material fact for trial, Plaintiffs' ability to ultimately prove to the trier of fact that the jobs of

PCO/PCOS and FCT/FCTS are substantially equal is never a foregone conclusion.  This risk militates in favor of the Settlement Agreement.

(5)    The risks of establishing damages.  Establishing the basic damages, as has been calculated by Plaintiffs' expert for settlement, was obviously attainable.  However, given bifurcation of the case, Plaintiffs' ability to proceed to the damage phase would require significant expenditure of attorney and expert's time.  The only damages not included in the Settlement Agreement was the compensation for the overtime differential.  Proving the amount of unpaid overtime would have proven problematic, because of the method of Defendants' record keeping.  Overtime pay was lumped in a general undifferentiated pay category which made calculations extremely difficult, if not impossible.

(6)    The risks of maintaining the class action through the trial.   The Supreme Court's most recent decision in *Wal-Mart v. Dukes,* ___ U.S.___, 2011 WL 2437013 (2011), would have, most probably, provoked Defendants to moving for de-certification.  Moreover, throughout the litigation the parties had an on-going dispute regarding the appropriate parameters of the class, which undoubtedly would have continued as a threat to the class.

(7)    The ability of the Defendants to withstand a greater judgment.  The Defendants ability to withstand a greater judgement could have become an issue in light of the County's threat of bankruptcy and The Nassau County Investment Finance Authority ("NIFA") taking over its finances.

(8&9)  The range of reasonableness of the Settlement Fund in light of the best possible recovery and the attendant risks.  As described above, the Settlement provides complete make whole relief to all class members for their loss in base salary. In light of the attendant risks and the

11

one to two year time required for continued litigation, the Settlement is more than reasonable and fair. Indeed, Plaintiffs submit it is an outstanding achievement for every class member. Each class member is receiving dollar for dollar the amount of base pay that she lost as a result of the pay disparity between the respective PCO/PCOS and the FCT/FCTS. She would not have received more in back pay for lost base pay had this case been litigated through successful judgment. Moreover, there is no cost to the class member for attorneys' fees or litigation expenses, since those monies are not being taken from the Settlement Fund. The only compromise made by Plaintiffs to obtain this outstanding result is forgoing interest payment on the sums awarded, and for those who worked overtime foregoing payment on the differential of those wages, both of which would have been available had this matter been pursued to successful judgment. Plaintiffs submit, however, that is a small sacrifice in exchange for avoiding the potential of several years of risky litigation to achieve this result. See *Damassia v. Duane Reade, Inc.,* 04 Civ. 08819 (GEL), 2009 WL 58411 28 (S.D.N.Y. July 27, 2009); *D'Amato*, 236 F. 3d at 86.

Procedural Fairness. The transparency of the negotiating process is a further *indicia* warranting approval of the Settlement Agreement. The negotiations were conducted under the supervision of Magistrate Judge Tomlinson and were clearly at arms-length. Class counsel are highly experienced lawyers with substantial class action experienced. Since there were no negotiations regarding counsels' entitlement to attorneys fees until after settlement of the class awards was reached, there was no conflict between the interests of class counsel and class members. Eisenberg Aff., Goodman Aff.

12

**B.    Attorneys' Fees and Costs**

Subject to the Court's approval, the Settlement Agreement provides that Defendants will pay directly to Eisenberg & Schnell, LLP, $355,000 in attorneys' fees and $1,846.69 in costs, and to the Law Offices of Janice Goodman, $415,000 in attorneys' fees and $128,789 in costs. As set forth above, counsel request additional payment of costs in the amount of $150.50 to Eisenberg & Schnell, LLP, and $1,291.98 to the Law Offices of Janice Goodman for expenses incurred subsequent to and not included in the Settlement computation. The fee request is based on the hourly rate of $650 for Herbert Eisenberg and $700 for Janice Goodman. In total, counsel spent over 1300 hours litigating and settling this case, over 650 by Eisenberg & Schnell, LLP (including paralegals and associates), and over 600 hours by Janice Goodman. The total fee for the work expended and results achieved warrant approval of the agreed upon fees and disbursements.

The two methods for determining the reasonableness of a fee request in a settlement are: (1) the Lodestar method which multiplies the hours reasonably expended on the case by a reasonable hourly rate, and (2) the common fund method whereby the amount is calculated as a percentage of the award to the class. *McDaniel v. County of Schenectady,* 595 F. 3d 411, 417 (2d Cir. 2010). Where, as here,

> money paid to the attorneys is entirely independent of money awarded to the class the Court's fiduciary role in overseeing the award is greatly reduced, because there is no conflict of interest between attorneys and class members.

*McBean v. City of New York,* 233 F.R.D. 377, 392 (S.D.N.Y. 2006)**.** Plaintiffs submit that the Court should  approve the agreed-upon attorneys' fees and costs, and that using both the lodestar

13

and percentage methodologies confirms that the fees requested and agreed upon are fair and reasonable.

### (1) Lodestar Method

### (a) Hourly Rate

The rates of $650 and $700 per hour for attorneys with class counsels' experience and expertise are well within a reasonable rate for awards in this District.  Indeed, in a relatively recent decision this Court approved a consent agreement  calculating a lodestar based on billable rates of between $585 and $790 for partners and $270 to $500 for associates. *Steinberg v. Nationalwide Mut. Ins. Co.,* 612 F. Supp. 2d 219, 224 (*E.D.N.Y.* May 5, 2009).  Judge Spatt acknowledged that $790 for senior partners, although on the high end, is an acceptable hourly rate in this District. In 2007, Judge Sifton similarly approved rates of up to $725 per hour for partners in a class action settlement.  *In re Gilat Satellite Networks, Ltd.*, CV-02-1510 (CPS), 2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007)(collecting cases).

Though these were consumer rights and securities cases, there is no basis to pay civil rights attorneys who take matters on a contingency basis at a rate less than what is awarded to attorneys litigating consumer cases.  In passing the Civil Rights Act of 1964 and amending it on several occasions, Congress made clear that the eradication of discrimination in employment is a policy of the greatest national importance. That policy should not be undermined by awarding civil rights attorneys fees at diminished rates.  Counsel, who are prepared to represent persons with valid claims, but limited economic resources should not be punished by awarding fees at a

14

lower rate than those awarded attorneys of similar skill and experience. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F. 3d 182, 184 fn 2 (2d Cir. 2008), *amending* 493 F. 3d 110 (2d cir. 2007)..

> Congress did not intend the private but public-spirited rate cutting attorney to be penalized for his public spiritedness by being paid on a lower scale than either his higher priced fellow barrister from a more established firm or his salaried neighbor at a legal service clinic. *Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F. 2d 1516, 1524 (D.C. Cir. 1988)

Moreover, the facts of this case warrant awarding the higher fee rates commanded by attorneys practicing in New York County. Deviation from the forum rule is appropriate "when a litigant demonstrates that her selection of counsel from outside the forum was 'reasonable under the circumstances.'" *Simmons v. New York City Transit Auth.*, 575 F. 3d 170, 175 (2d Cir. 2009) (citation omitted). Special circumstances warranting deviation from the "forum rule" include instances "where the special expertise of non local counsel was essential to the case." In re *"Agent Orange" Product Liability Litig.*, 818 F. 2d 226, 232 (2d Cir. 1987).

In this case, Plaintiffs sought out Ms. Goodman because she brought special expertise to this action as a result of her previous successful representation of the class of Police Communications Technicians in New York City with the same claim asserted here: that the predominately female positions of PCT were paid significantly less than the exclusively male fire alarm dispatchers. See *Scotti v. City of New York*, 84 Civ. 5462 (JSM), 1991 U.S. Dist. LEXIS 15256 (S.D.N.Y. June 21, 1991). Mr. Eisenberg was brought on as co-counsel because of his extensive litigation experience in the area of employment discrimination. Other counsel was not available. The union representing the PCOs in Nassau, although supportive, refused to undertake

15

Federal Court litigation.   Also, the Plaintiffs were unable to find local Nassau County attorneys

with competence in class action litigation, who were willing to undertake this matter on a

contingency basis.  Goodman Aff. ¶38.

### (b)  Time Spent

The time spent by class counsel on this case over approximately six (6) years is described

in detail in  counsel's affirmations.   As discussed above,  the County aggressively litigated this

case.  It also refused to discuss settlement until the case was on the brink of trial.  Indeed, in light

of the contentious litigation, counsel, because of their expertise, were extraordinarily efficient in

bringing this matter to a successful conclusion.  Generally, a party must be compensated for

meeting the vigorous defense of the opposing party.  "A defendant cannot litigate tenaciously and

then be heard to complain about the time necessarily spent by the plaintiff in response."  See

*Graham v. Sauk Prairie Police Com'n.,* 915 F. 2d 1085, 1109 (7th Cir. 1990)" (citing *City of*

*Riverside v. Rivera,* 477 U.S. 461, 580 n. 11 (1986)).

Class counsel took nine(9) depositions and defended seven (7), responded to multiple

motions, reviewed thousands of documents, prevailed in defense of a summary judgment motion

and successfully challenged the report of Defendants' expert witness.  Every effort was made to

avoid duplication of work by attorneys.  Ultimately, there was near complete success both in the

litigation and then in obtaining make whole relief for the class members.

### (2)   Common Fund Fee Determination

This is not a common fund case. In other words, counsel is not suggesting that a

percentage be withheld from the award to the class for counsel fees.  Defendants have agreed to

pay attorneys fees and costs directly to Plaintiffs' counsel. Still, Plaintiffs submit that if the agreed

upon fees were viewed as a percentage of the fund, Plaintiffs' fee award would fall well within the range of reasonable fees approved by the Courts in this Circuit.  See e.g., *McBean v. City of New York,* 233 F.R.D. 377, 393 (S.D.N.Y. 2006).  ("In common fund cases, awards in the range of 25% are common...and while this is not a common fund case, the fact that the award here is lower than many awards actually taken from a common found, at the expense of absent class members, is further evidence of its reasonableness.")

The agreed upon amount of total fees, $770,000, is a mere 11% of the seven million ($7,000,000) dollar settlement fund obtained for the class members.  This is well below the norm in common fund cases.  It is not unusual for awards to be in the range of 30%-38% of the common fund.  See *Stefaniak v. HSBC Bank, USA, NA,* Case No. 1-05-CV-7205, 2008 WL 7630102 * 3 (W.D.N.Y., July 8, 2008) (holding that fee awards of 33% of the settlement fund is typical of class action settlements in the Second Circuit)(collecting cases).

When there is an agreed upon settlement of fees, applying the percentage method rather than the cumbersome lodestar method, as a basis to adjudge reasonableness, is an attractive process.  "[C]ourts increasingly have come to recognize the shortcomings of the lodestar/multiplier method as a universal rule for compensation."  *Strougo v. Bassini,* 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) (citation omitted).

> Experience...has finally taught us that convoluted judicial efforts to evaluate the lodestar, and see to it that the lodestar hours were reasonable and necessary...are extremely difficult to say the least, and unrewarding. Such efforts produce much judicial paper shuffling, in many cases with no real assurance that an accurate or fair result has been achieved. *In re Union Carbide Corp. Consumer prods. Bus. Secs. Litig.,* 724 F. Supp. 169, 165 (S.D.N.Y. 1989).

17

Judge Brient, in *Union Carbide,* went on to comment that "In the final analysis after adjusting the lodestar to conform to reality where necessary, and after a reasonable multiplier has been developed, and all is said and done, a Court essentially makes no more than a qualitative assessment of a fair legal fee under all the circumstances of the case, just as if it had applied the twelve amorphous criteria set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F. 2d 714, 717-719 (5th Cir. 1974) or the six equally amorphous criteria of *Grinnell I.*"   *In re Union Carbide Corp.,* 724 F. Supp. at 166.

Although the percentage of recovery method has been applied exclusively where the fees are taken from a common fund, conceptually there is no difference.  In a case such as the instant action, where the request is so eminently in line with the result achieved, the various court comments regarding the difficulties in applying the lodestar method equally apply.  To try to dissect the minutia of time spent and determining the going rates for such work does not ensure fairness or expeditious disposition.  Indeed, the percentage of recovery method is even more warranted in cases like the present, since no money is being taken from the pockets of the class, there was no conflict in the negotiations, and the contingency rate requested is so low.

## C.   Costs

The costs requested are also very modest.  The major expenditure was the necessary amount for an expert witness.  The other significant large cost was for deposition transcripts.  A detailed statement of costs is attached to counsels' affirmations. On its face, these were reasonable and necessary to the successful prosecution of this litigation.

## CONCLUSION

For the above reasons, final approval of the Settlement Agreement is appropriate and the

Court should award Class Counsel the agreed upon fees and costs requested.

Dated: August 23, 2011
        New York, New York


                                        Respectfully submitted,



                                        Janice Goodman (0489)



                                        Attorney for Plaintiffs and the Classes
                                        Law Offices of Janice Goodman
                                        350 Seventh Avenue, Suite 1800
                                        New York, New York 10001
                                        212-869-1940


                                        Herbert Eisenberg (8796)



                                        Attorney for Plaintiffs and the Classes
                                        Eisenberg & Schnell, LLP
                                        233 Broadway, Suite 2704
                                        New York, New York  10279
                                        212-966-8900


19